(No. 36151.

PIONEER TRUST AND SAVINGS BANK, Trustee, *et al.,* Appellees, vs. THE VILLAGE OF MOUNT PROSPECT *et al.,* Appellants.

*Opinion filed May 19, 1961.—Rehearing denied September 20, 1961.*

ROBERT J. DOWNING, and ROBERT G. LUSSIER, both of Chicago, (RASKIN and DOWNING, of Chicago, of counsel,) for appellants.

ALBERT J. HORRELL, of Chicago, (HORRELL and BORDE, of Chicago, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Plaintiffs brought a *mandamus* proceeding in the circuit court of Cook County to compel the corporate authorities of the village of Mount Prospect to approve a plat of subdivision which complied with all the provisions of the official plan of the municipality except that requiring a dedication of land for public use. The case was submitted to the court on an agreed statement of facts. The court entered an

order finding the land dedication requirements of the village's official plan invalid and directed the issuance of a writ of *mandamus* commanding the corporate authorities to approve the plat. The trial court has certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal.

Article 53 of the Revised Cities and Villages Act authorizes municipalities to establish plan commissions with authority to recommend to the corporate authorities the adoption of an official plan. Section 53—2 (Ill. Rev. Stat. 1959, chap. 24, par. 53—2) provides that the plan may "establish reasonable standards of design for subdivisions and for resubdivisions of unimproved land and of areas subject to redevelopment, including reasonable requirements for public streets, alleys, ways for public service facilities, parks, playgrounds, school grounds, and other public grounds." Section 53—3 provides that no plat of subdivision "shall be entitled to record or shall be valid unless the subdivision shown thereon provides for streets, alleys, * * * and public grounds in conformity with the applicable requirements of the official plan."

The village of Mount Prospect has established a plan commission and has adopted by ordinance an official plan as recommended by the commission. Section 6 of article II of that plan contains a requirement for the dedication of public grounds as follows:

"Dedication of Lands for Public Use: The plat shall have lettered upon it a statement of dedications properly conveying all usable lands dedicated for such public uses as streets, public schools, parks or any other public use, and there shall be attached to the plat a certificate of title certifying the ownership of all such lands to be so dedicated by said plat. Public grounds, other than streets, alleys and parking areas, shall be dedicated in appropriate locations by the plat (a) at the rate of at least one (1) acre for each sixty (60) residential building sites or family living units,

which may be accommodated under the restrictions applying to the land; or (b) at the rate of at least one-tenth ($\frac{1}{10}$) acre for each one (1) acre of business or industrial building sites which may be accommodated under the restrictions applying to the land."

Plaintiff Salvatore Dimucci is engaged in the business of subdividing real estate for residential purposes and caused a plat of the subdivision to be submitted to the plan commission for approval which complied in all respects with the aforesaid ordinance except as to the dedication of some 6.7 acres of land which would be required under the language of section 6 of article II quoted above. The plaintiffs have refused to dedicate land, and, in view of that refusal, the village board has refused to approve the plat of the subdivision. It is established in the record that the 6.7 acres of land sought to be required to be dedicated or donated would be for the use of an elementary school and for the use of the Mount Prospect Park District as an elementary school site and a secondary use as a playground. The proposed subdivision shows some 250 residential units.

The issue here presented for determination is the validity of the quoted section of the ordinance, and no provision of the ordinance other than that requiring the dedication is under attack by the plaintiffs in this proceeding.

The statute from which the village derives its authority has been before us on two previous occasions. (*Petterson* v. *City of Naperville,* 9 Ill.2d 233; *Rosen* v. *Village of Downers Grove,* 19 Ill.2d 448.) In each of these cases the issue presented for decision was narrowly circumscribed, and in neither case did we pass upon the precise point that is involved here. The *Petterson case.* did not involve any question of required dedication of land, but rather concerned the reasonableness of a requirement that the subdivider provide curbs and gutters for the streets of the subdivision. We sustained the validity of such a requirement, stating that "the power to prescribe reasonable requirements

for public streets in the interest of the health and safety of the inhabitants of the city and contiguous territory includes more than a mere designation of the location and width of streets." The *Rosen case* involved a portion of an ordinance of the village of Downers Grove which required subdividers to dedicate land for educational facilities but also provided that if the plan commission should deem that the dedication of such land would not of itself meet the reasonable requirements of providing educational facilities for the proposed subdivision, then the plan commission might require any additional means for providing reasonable facilities. Acting under this ordinance, the municipality attempted to require subdividers to pay a certain sum per lot for educational purposes. We held this attempt invalid because the specific technique employed was not authorized by the statute, and also because the term "educational purposes" was broader than the language of the statute. The Downers Grove ordinance did contain a paragraph, similar to that involved in the instant case, requiring the dedication for public grounds of at least one acre of land for each 75 family living units; but this particular provision was not directly involved in the litigation and we refused to pass on its validity.

Our opinion in the *Rosen case* thus specifically left undecided the question that is now presented for decision. It did, however, suggest some basic principles for distinguishing between permissible and forbidden requirements. We stated in the *Rosen case* that the statutory provisions with respect to reasonable requirements for streets and public grounds were based upon the theory that "the developer of a subdivision may be required to assume those costs which are specifically and uniquely attributable to his activity and which would otherwise be cast upon the public." We further observed: "But because the requirement that a plat of subdivision be approved affords an appropriate point of control with respect to costs made necessary by the subdivision, it

does not follow that communities may use this point of control to solve all of the problems which they can foresee. The distinction between permissible and forbidden requirements is suggested in *Ayres* v. *The City Council of Los Angeles,* 34 Cal.2d 31, 207 P.2d 1, which indicates that the municipality may require the developer to provide the streets which are required by the activity within the subdivision but can not require him to provide a major thoroughfare, the need for which stems from the total activity of the community." It is in the light of these basic principles that the reasonableness of the requirement sought to be imposed by the defendant village must be determined. If the requirement is within the statutory grant of power to the municipality and if the burden cast upon the subdivider is specifically and uniquely attributable to his activity, then the requirement is permissible; if not, it is forbidden and amounts to a confiscation of private property in contravention of the constitutional prohibitions rather than reasonable regulation under the police power.

Mr. Justice Holmes, in *Pennsylvania Coal Co.* v. *Mahon,* 260 U.S. 393, 67 L. ed. 322, stated the same issue with his usual clarity and conciseness, when he said: "The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in the decisions upon the Fourteenth Amendment. *Hairston* v. *Danville & Western Ry. Co.* 208 U.S. 598, 605. When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States."

There can be no controversy about the obvious fact that the orderly development of a municipality must necessarily include a consideration of the present and future need for

school and public recreational facilities. Neither the plaintiffs nor the defendants in this case take the negative side of the question as to the desirability either of education or recreation. The question is not one of the desirability of education or recreation, nor of the desirability to improve the public condition, but, rather, the question presented here is one of determining who shall pay for such improvements. Is it reasonable that a subdivider should be required under the guise of a police power regulation to dedicate a portion of his property to public use; or does this amount to a veiled exercise of the power of eminent domain and a confiscation of private property behind the defense of police regulations?

That the addition by this subdivision of some 250 residential units to the municipality would of course aggravate the existing need for additional school and recreational facilities is admitted by the parties to this cause. No complaint is made by the plaintiff in this cause that the land required to be dedicated for such purposes by subdivision control ordinance is unnecessary. The sole question thus presented here is whether the state of law is such that a mandatory dedication of the land without cost to the public may be sustained in the regulation of proposed subdivision when it is admitted that such land may well be needed.

However, this record does not establish that the need for recreational and educational facilities in the event that said subdivision plat is permitted to be filed, is one that is specifically and uniquely attributable to the addition of the subdivision and which should be cast upon the subdivider as his sole financial burden. The agreed statement of facts shows that the present school facilities of Mount Prospect are near capacity. This is the result of the total development of the community. If this whole community had not developed to such an extent or if the existing school facilities were greater, the purported need supposedly would not be present. Therefore, on the record in this case the school problem which allegedly exists here is one which the sub-

divider should not be obliged to pay the total cost of remedying, and to so construe the statute would amount to an exercise of the power of eminent domain without compensation. *Sanitary District of Chicago* v. *Chicago and Alton Railroad Co.* 267 Ill. 252, and cases there cited; *Ridgemont Development Co.* v. *City of East Detroit,* 358 Mich. 387.

Section 6 of article II of the defendant village ordinance imposes an unreasonable condition precedent for the approval of a plat of a subdivision and purports to take private property for public use without compensation. The circuit court of Cook County was correct in so holding, and the judgment of that court is affirmed.

*Judgment affirmed.*