264 A.2d 910.

FRANK ANSUINI, INC. *vs.* CITY OF CRANSTON.

APRIL 30, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

64

POWERS, J. This is a civil complaint which partakes of a petition for declaratory judgment and was heard by a justice of the Superior Court on the pleadings, exhibits and on agreed statement of facts. It seeks to strike down, as being ultra vires of the police power, a regulation of the City of Cranston's Planning Commission requiring, as a condition precedent to final plat approval, the voluntary donation for recreation purposes of at least seven per cent of the land to be divided.

From a Superior Court judgment for plaintiff, defendant city appealed to this court.

General Laws 1956, §45-23-2 provides:

"Power to Authorize Rules by Commission. — For the purpose of promoting the general health, safety, morals or general welfare, the city council of any city and the town council of any town shall have power in accordance with the provisions of this chapter within the limits of such city or town by ordinance to authorize and empower the plan commission to adopt, modify and amend rules and regulations governing and restricting the platting or other subdivision of land in such city or town, and to control the subdivision of land pursuant to such rules and regulations."

Pursuant thereto, the City of Cranston adopted an ordinance creating a planning commission which, in turn, adopted rules and regulations as authorized by sections 3 and 6 of chapter 23 of title 45.

Section 45-23-3 provides:

"Purpose of Rules. — Such rules and regulations shall be designed to make adequate provisions for traffic; to lessen traffic accidents; to promote safety from fire and other dangers; to provide adequate light and air; to prevent overcrowding of land; to prevent the development of unsanitary areas for housing purposes; to secure a well-articulated street and highway system; to promote a co-ordinated development of unbuilt areas; to secure an appropriate allotment of land area in new developments for all the requirements of community life; to conserve natural beauty and other natural resources; to conform to any master plan which may have been adopted; to furnish guidance for the wise and efficient expenditure of funds for public works; and to facilitate the adequate, efficient and economic provision of transportation, water supply, sewerage, recreation and other public utilities and requisites."

Section 45-23-6 provides:

"Regulations as to Physical Requirements of Subdivisions — Completion Bonds. — Such rules and regulations may further provide among other things for the harmonious development of the city or town; for the coordination of streets within subdivisions with

other existing or planned streets and with any master plan of said city or town which may have been adopted; for the width of streets, limitations of street grades, and of street intersection angles; the relation of streets to topography and the prevention of the duplication of street names; for the minimum width, depth, and area of lots; for adequate open spaces for traffic, recreation, light, and air; and for a distribution of population and traffic which will tend to create conditions favorable to health, safety, convenience, and prosperity. Such regulations may include requirements as to the extent to which and the manner in which streets shall be graded and improved and water, sewer, and other utility mains, piping, connections, or other facilities shall be installed, where reasonable and possible, as a condition precedent to the approval of the plat. Such regulations may provide that, in lieu of the completion of such work and instalations [sic] previous to the final approval of a plat, the commission may accept a bond, in an amount and with surety and conditions satisfactory to it, providing for and securing to the city the actual construction and instalation [sic] of such improvements and utilities within a period specified by the commission and expressed in the bond; and the city is hereby granted the power to enforce such bonds by all appropriate legal and equitable remedies.

In the adoption of rules and regulations, and in the consideration of plats submitted thereunder, the plan commission shall take into consideration the prospective character of the development whether residence, business or industrial, and in the case of residence developments, whether the same are for seasonal use or for year round occupation."

On December 27, 1965, purporting to act on the authority of these sections, the Cranston Planning Commission, with the approval of the city council, adopted a regulation designated as section III(H) of the commission's rules and regulations. It provides:

"H. Public Open Spaces

Developers of residential plats shall deed at least seven (7%) per cent of the land area of such plat to the city to be used for recreation purposes. Such land shall be in addition to the land deeded for highway purposes. Such land shall be chosen on the basis of a preliminary site plan showing the entire area of land to be subdivided at present or in the future. Such land shall be chosen so as to be adaptable for such purposes, must be in a desirable location and must be acceptable to the Plan Commission. Due regard shall be shown for all natural features such as large trees, natural groves, water courses, scenic points, and similar community assets which will add attractiveness to the community if preserved."

The agreed statement of facts establishes that plaintiff is the owner of a tract of land in Cranston, for the subdivision of which, it made application to the city planning commission.[1] Said commission, however, withheld acceptance of the proposed final plat because of plaintiff's refusal to voluntarily donate a portion of the land for recreation purposes, and the instant litigation ensued.

In our view, the ultimate issue presented is the validity of section III(H) of said regulations. So postured, this raises four questions.

The first such question is whether the General Assembly may require, as a condition precedent to the subdivision of land, a voluntary donation of a portion thereof for recreation purposes.

Secondly, if it is within the police power of the General Assembly to impose such a requirement, may it validly delegate such power to the several cities and towns?

---

[1]The tract involved in the complaint as originally filed related to the subject land designated as section 6 of Westwood. However, the complaint was subsequently amended so as to relate to a second parcel designated as section 7 of said Westwood. Consequently, our resolution of the instant controversy is applicable to both parcels.

If so, the question which then arises is whether the language employed by the General Assembly in sections 3 and 6 of chapter 23 of title 45, pursuant to which section III(H) of the Cranston Planning Commission's rules and regulations was adopted, is so broad as to warrant a municipal planning commission to adopt a regulation making a voluntary donation a condition precedent to the approval of a proposed plat.

If these three questions can be answered in the affirmative, there then arises the narrow but determinative question, namely: Is the "at least 7%" donation requirement of section III(H) of the rules and regulations of the Cranston Planning Commission within or in excess of the legislative delegation of power?

Since we think that the first three questions call for an affirmative answer, we turn to a consideration of all four questions.

It is almost universally held that it is within the police power of the state legislature to require such a voluntary donation. *Ayres* v. *City Council of Los Angeles,* 34 Cal.2d 31, 207 P.2d 1; *Pioneer Trust & Savings Bank* v. *Village of Mount Prospect,* 22 Ill. 2d 375, 176 N. E. 2d 799; *Jordan* v. *Village of Menomonee Falls,* 28 Wis.2d 608, 137 N. W. 2d 442; *Billings Properties, Inc.* v. *Yellowstone County,* 144 Mont. 25, 394 P.2d 182; *Jenad, Inc.* v. *Village of Scarsdale,* 18 N. Y.2d 78, 218 N. E. 2d 673; *Aunt Hack Ridge Estates, Inc.* v. *Planning Commission of Danbury,* 27 Conn. Supp. 74, 230 A.2d 45. The basis for the unanimity is, in essence, that the natural result of subdivision, as shown by experience, is an increased need in the community for recreation areas, and to require a developer to provide and donate that which, except for his proposed subdivision, would not be required is a valid exercise of the police power and not a taking without just compensation.

The authorities are not in harmony, however, regarding the manner in which the donation requirement is applied. In *Pioneer, supra,* citing *Ayres, supra,* the rule is stated to be that a developer may be required to donate only such portion of the land to be divided as may be needed for such public uses as will result from the activities specifically and uniquely attributable to him.

On the other hand, it has been held that the legislature may require a stated percentage donation in which case the burden is on each would-be developer to show that the stated percentage is unreasonable as to him. *Billings Properties, Inc.* v. *Yellowstone County, supra; Jordan* v. *Village of Menomonee Falls, supra; Jenad, Inc.* v. *Village of Scarsdale, supra; Aunt Hack Ridge Estates, Inc.* v. *Planning Commission of Danbury, supra.*

It is on these later cited cases that defendant seeks support for the validity of the challenged regulation. We are of the opinion, however, that the rule as enunciated in *Pioneer* is the more reasonable and should apply in this jurisdiction. It seems obvious to us that a fixed percentage requirement will inevitably create inequities, which will be less likely to arise under the specifically and uniquely attributable formula.

The question of the General Assembly's right to assign to the several cities and towns the authority to regulate the use and development of land within their respective boundaries has not been previously considered by this court, conceivably because P. L. 1945, ch. 1631, §1, now G. L. 1956, §45-23-1 et seq., the enabling act governing the subdivision of land in this state, was enacted twenty years after the enabling act authorizing zoning by the several cities and towns, now G. L. 1956, §45-24-1 et seq., as amended. Since the declared purpose of providing for the regulation of the subdivision as well as the use of land is to protect public health, safety, morals and welfare, the

decisions of this court upholding the validity of the zoning enabling statute were taken as authority for the proposition that the enactment of the enabling act relating to subdivision was a constitutional prerogative of the General Assembly. See *City of Providence* v. *Stephens,* 47 R. I. 387, 133 A. 614. In any event, we now definitely hold that, with respect to the purposes which its enactment contemplated to be served, now §45-23-1 et seq. constitutes a valid exercise of the General Assembly's prerogative to cloak the several cities and towns with jurisdiction to exercise the related phase of the state's sovereignty. It follows that the right of the City of Cranston to create a planning commission in the first instance and that of the latter to adopt rules and regulations are not open to question, assuming of course all which was done in these regards is within the legislative grant set forth in §45-23-1 et seq.

This brings us to the somewhat more troublesome question of whether the power of the planning commission to adopt rules and regulations, purportedly contemplated by sections 3 and 6 of chapter 23 of title 45, is so broad as to authorize the municipal agency to require a voluntary donation as a condition precedent to final approval of a proposed plat.

Although no provision is expressly contained in either section 3 or 6, we think that from a fair reading of the legislative phraseology thereof, favorably construed,[2] it must be concluded that a regulation requiring an involuntary dedication of a portion of the land to be divided may be validly adopted on implied authority.

---

[2]Section 45-23-21 provides:

"Construction favorably to plan commission.—In construing the provisions of this chapter and any ordinance passed hereunder, all courts shall consider the same most favorably to the plan commission, it being the intent hereof to give to such plan commission the fullest and most complete powers possible concerning the matters provided for herein."

Having therefore determined that the Cranston Planning Commission could validly adopt a regulation whereby the instant plaintiff could be required to donate a portion of its proposed plat for recreation purposes, there remains the dispositive question of whether at least seven per cent of the land area required by section III(H) is within or ultra vires of the commission's implied authority.

We have heretofore held in this opinion that the involuntary dedication of land is a valid exercise of the police power only to the extent that the need for the land required to be donated results from the specific and unique activity attributable to the developer. The validity of a requirement of a voluntary donation being so limited, we think a regulation requiring a donation of "at least 7%" is clearly arbitrary on its face.

It is our judgment, therefore, that municipal agencies such as the planning commission here or any similar agency created pursuant to the provisions of §45-23-1 et seq. are without authority to adopt an enforceable regulation whereby an applicant for the subdivision of land is required to donate a legislated minimum percentage of the land to be developed. Consequently, the "at least 7%" requirement of section III(H) of the planning commission's rules and regulations, lacking constitutional validity, must be declared null and void.

Prescinding from the merits on the issue of the validity of section III(H), defendant additionally contends that plaintiff is not entitled to judicial relief for the reason that it did not first exhaust the administrative remedy afforded by the enabling act as supplemented by section VI of the planning commission's rules and regulations.[3]

---

[3]General Laws 1956, §45-23-14, as amended by P. L. 1962, chap. 67, sec. 1, provides, in essence, for the creation of a board of review by a city or town adopting the provisions of §45-23-1 et seq. Sections 45-23-15, 16, 17

Said section VI provides in pertinent part that the board of review "may, in appropriate cases and with suitable safeguards, make special exceptions to these rules and regulations if such exceptions are in harmony with the general purpose and intent of these rules, or where such exception is reasonably necessary for the convenience or welfare of the public."

It is not disputed that, on the planning commission's refusal to give final approval to plaintiff's proposed plat because of the latter's refusal to deed for recreation purposes at least seven per cent of the proposed plat, plaintiff did not take an appeal to the board of review, but rather initiated the instant litigation. This by-passing of the administrative appeal procedure, defendant argues, operates to deny plaintiff a right of judicial review of the planning commission's action, relying on *Nardi* v. *City of Providence*, 89 R. I. 437, 153 A.2d 136. Such reliance is misplaced.

There, Nardi was the owner of a parcel of land which was zoned business from the original adoption of City of Providence Zoning Ordinance in 1923 until 1951. In 1951, however, the city council adopted a city-wide amendment which resulted in placing Nardi's land in an R-3 or general residence zone.

Nardi brought a bill in equity pursuant to the provisions of then G. L. 1938, chap. 528, sec. 19,[4] seeking to have the ordinance declared invalid, averring that the ordinance as applied to him amounted to a deprivation of all beneficial use, and prayed for a declaratory decree.

---

and 18, establish the jurisdiction of the board of review, as well as a right of appeal by an aggrieved party, and the procedures for a hearing on such appeals. By section VI of the Cranston Planning Commission's rules and regulations, the zoning board of review is specifically designated as the platting board of review.

[4]This section is now chapter 30 of title 9, G. L. 1956, as amended, and entitled "Uniform Declaratory Judgments Act."

This prayer was denied for the reason that Nardi had not exhausted his administrative remedies. However, his attack on the invalidity of the ordinance was not premised on the proposition that the ordinance was patently defective, that is to say, invalid on its face, and the thrust of his contentions as to its validity was that the rezoning was arbitrary as to him. Since by the terms of the enabling act and the ordinance any unreasonableness of the latter as applied to Nardi's land might possibly have been relieved by way of a variance or special exception through application to the zoning board of review, the Superior Court held, and this court affirmed, that Nardi was not entitled to a declaratory decree without having first sought relief from the zoning board of review.

In the instant case, however, the thrust of plaintiff's attack on the validity of section III(H) of the planning commission's rules and regulations is that the challenged section is not authorized by the enabling act. Lacking such authorization, the section in question would be a nullity. Unlike the situation in *Nardi*, the instant plaintiff asserts patent invalidity, and the determination of that question is for the courts. See *State* v. *Goldberg*, 61 R. I. 461, 1 A.2d 101.

Again, unlike the situation in Nardi, it would have been futile for the instant plaintiff to have appealed to the board of review, since that agency lacked authority to declare as being a nullity a provision of the regulations which, like the board of review itself, was a creature of the municipal legislature. See *Arc-Lan Co.* v. *Zoning Board of Review*, 106 R. I. 474, 261 A.2d 280. In such circumstances, the courts will not deny judicial relief on the ground that one invoking its protection has first failed to do that which would be futile. See 73 C.J.S. *Exhaustion of Administrative Remedies in General*, §41, and the cases therein cited.

For the reasons stated, the appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Aram A. Arabian,* for plaintiff.

*Peter Palombo, Jr.,* City Solicitor, for defendant.

264 A.2d 921.

RODOLFO M. BARBONE *et al. vs.* ZONING BOARD OF REVIEW OF THE CITY OF WARWICK.

APRIL 30, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This petition for certiorari was brought to review a decision of the Zoning Board of Review of the City of Warwick granting an application for an exception or variance to permit the use of a tract of land in a Residence A-10 district for the construction of two 28-unit

apartment buildings and to vary area restrictions which the proposed buildings would violate. The writ issued and the pertinent records have been certified.

Although the application and the supporting documents filed by the landowners describe the kind and type of apartment buildings proposed to be constructed, they do not identify with specificity what area restrictions would require relaxation in order to permit the applicants to proceed with the development as proposed. Notwithstanding that omission, the board recited in the notice which it gave of the hearing on the application, as well as in the minutes of its proceedings and in its decision, that the permission applied for was to erect "* * * two 28-unit apartment buildings with less than required setback from rear lot line on property [and] with less than required frontage and area on southerly side of Toll Gate Road * * *." Perhaps equally pertinent to the application, but nowhere referred to by the board, is the restriction found in section 3.5 of the ordinance which apparently would prohibit the applicants from erecting more than one main residential building on the portion of the single lot[1] owned by them.

Because of our view of this case, it is only necessary to consider that portion of the record which favors the applicants. It discloses that they are the owners of an irregularly shaped parcel of real estate which is situated on the southerly side of Toll Gate Road in a Residence A-10 district where the permitted uses include detached single dwelling units, churches, schools, colleges, libraries, museums, farms, raising of crops, and accessory buildings and uses. The tract is unimproved except for a dilapidated building. It contains 3.62 acres, one acre of which consists of a pond and a stream. Real estate experts testified

---

[1]The application describes the land affected as a portion of lot 241 (now 318) on assessor's plat 246.

that it is impractical to utilize the site for single-family dwellings and that the "fullest use" of the land can be realized only if it is devoted to "multiple units"; they testified in addition that the proposed development would be compatible with and would not have an adverse effect upon the value of neighboring property. There was also evidence that the state health department has approved the sewage disposal systems for the planned buildings.

*McOsker, Gorodetsky & Isserlis, Milton L. Isserlis, Sanford H. Gorodetsky,* for petitioners.

*Howard R. Haronian,* City Solicitor, *William F. Paquin,* Assistant City Solicitor, for respondent.