O. L. KRUGHOFF *et al.*, d/b/a The K Company, *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF NAPERVILLE, Defendant-Appellee.

Second District (1st Division)    No. 75-53

Opinion filed August 26, 1976.

William S. Kaplan and Robert Marks, both of Marks, Marks & Kaplan, of Chicago, for appellants.

Ancel, Glink, Diamond & Murphy, of Chicago, and Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Whether the defendant, the City of Naperville, can, by its ordinance (referred to as 72-20), require contribution of land, or money in lieu of land, to be used for school and park sites as a condition of approval of a plat of subdivision or planned unit development within defendant's boundaries or within 1½ miles therefrom is before us in this appeal.

The plaintiffs filed a class action for declaratory judgment to declare the

defendant's ordinance 72-20 void as being beyond defendant's constitutional home rule powers, unauthorized by statute and violative of the Illinois and United States constitutions. The trial court declared the ordinance valid, and the plaintiffs appeal.

The plaintiffs, O. L. Krughoff and James Krughoff, doing business as the K Company, acquired property within 1½ miles of defendant's boundaries suitable for subdividing into residential lots. They submitted a final plat of subdivision which the defendant refused to approve without the dedications or donations required by ordinance 72-20. The Krughoffs did not comply and claim that as a consequence they were not able to proceed with their plans. The plaintiffs, Paul W. Hoffman, Harold E. Moser, the Oliver-Hoffman Corporation and The Macom Corporation (hereinafter referred to collectively as "Oliver-Hoffman") acquired land within the City of Naperville to subdivide and sell as residential lots. They were required to contribute $37,650 to be held in trust for acquisition of a school site, and they agreed in writing to contribute a lot for the Naperville Park District's use. These plaintiffs seek return of the money and nullification of the agreement, should the ordinance be declared invalid.

The plaintiff, Home Builders of Greater Chicago, is an Illinois not-for-profit corporation, some of whose members own or control real estate within 1½ miles from the city's border.

Although entirely within adjoining Kane County, West Aurora Unit School District No. 129 was permitted to intervene in support of the appellee because Kane County and other municipalities in the county, in exercise of their alleged home rule powers, have passed ordinances similar to that of the City of Naperville.

There was evidence from planning studies that the City of Naperville has experienced a rapid population increase, from 12,933 in 1960 to 28,610 by the end of 1973. The city's population was projected to continue to increase to between 42,000 and 52,000 in 1980 and between 66,000 and 81,000 in 1990.

Ordinance 72-20, enacted by the city on June 19, 1972, imposes certain conditions precedent to the approval of a plat of subdivision or planned unit development within the city's jurisdiction. In accordance with existing standards establishing the optimum accessibility of different types of parks and recreational areas for every resident, the ordinance requires the dedication of land within the development for park and recreational purposes. The amount to be dedicated is 5.5 acres per 1000 of ultimate population in a proposed development. In recognition of the fact that private recreational areas within the development, such as swimming pools, may reduce the demand for comparable public facilities, the

ordinance provides that credit may be given for the furnishing of private recreational areas.

The ordinance also requires the dedication of land to be used as school sites pursuant to criteria for optimum capacity, location, and site size of elementary, junior high, and high schools to serve the population of the development. Ultimate population is determined by reference to a table, incorporated in the ordinance, which estimates the number of persons and the age distribution of children who will occupy various types of new living units. A subdivider or developer has the option of submitting his own demographic study showing the additional estimated population to be generated if he objects to the use of the table in the ordinance.

In the event that land dedication is impractical due to the small size of the subdivision or the nature of the available land, the ordinance provides that cash may be donated in lieu of the fair market value of the land. Provision is also made for a combination of land dedication and monetary donations. Cash contributions may only be used for land acquisition or site improvements (but not for the construction of school buildings) of school grounds or recreational areas which will serve the particular development or subdivision. Fair market value is $15,000 per acre, according to the ordinance, but a developer may present evidence contesting the use of that figure.

The ordinance also permits combinations of dedications between small adjoining subdivisions where appropriate and the reservation of additional land, to be purchased from the developer within one year, where the city's comprehensive plan calls for more land in a particular subdivision than the developer may be required to dedicate under the ordinance.

The plaintiffs have stipulated that the various criteria, formulae, and values upon which the dedication or donation requirement is calculated are reasonable.

We first consider whether the subject matter of the ordinance was within the grant of powers to the City of Naperville as a home rule municipality.

■▋ Since the adoption of the 1970 Illinois Constitution, the power of a home rule municipality to regulate land use is derived primarily from the constitution. (See *Cain v. American National Bank & Trust Co.*, 26 Ill. App. 3d 574, 581 (1975).) Subsection (a) of section 6 of article VII of the Constitution (Ill. Const. 1970, art. VII, §6) provides as material here:

> "* * * [A] home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate the protection of the public health, safety, morals and welfare * * *."

Under prior statutes, requiring certain conditions precedent to the subdivision of land and the approval of plats of subdivisions was long characterized as involving the exercise of the police power. (See *Petterson v. City of Naperville*, 9 Ill. 2d 233 (1956).) In addition, plaintiffs conceded that the mandatory requirement of the dedication of certain streets, curbs, sidewalks, gutters, sewers and like improvements, which are "uniquely, specifically and solely attributed to a specific subdivision," may be properly imposed by ordinance.

Plaintiffs contend, however, that ordinance 72-20 is not an exercise of the home rule municipality's police power in a matter "pertaining to its government and affairs," as provided by the constitution but is a pretended use of its home rule police powers to obtain land or money for the sole and exclusive use of independent school or park districts. Plaintiffs particularly note that school districts are expressly excepted from the definition of units of local government in article VII, section 1 of the 1970 Constitution and are made the subject of the separate article X.

It is a matter of common knowledge and experience, however, that a municipality is vitally interested in provisions for convenient and adequate educational and recreational facilities for the members of its urban community irrespective of the city's lack of control over the day-to-day operations of governing bodies which provide these services. In addition, there are a number of provisions in the Illinois statutes which appear to assume that provision for school and park sites pertains to the government and affairs of a municipality. For example, section 11—12—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—12—5) provides that the official plan "may include reasonable requirements with reference to streets, alleys, public grounds, and other improvements hereinafter specified. * * * Such plan may be implemented by ordinances (a) establishing reasonable standards of design for subdivisions * * * in respect to public improvements as herein defined; (b) establishing reasonable requirements governing * * * parks, playgrounds, school grounds * * * ."

Section 11—12—6, which provides for the adoption by ordinance of an official map, states that the map shall be made part of an ordinance "which ordinance shall specifically state standard requirements of the municipality relating to * * * parks, playgrounds, school sites, other public grounds * * * ."

Section 11—12—12 provides that no map or plat of any subdivision will be entitled to record "unless the subdivision shown thereon provides for * * * public grounds, in conformity with applicable requirements of the ordinances including the official map * * * ."

It is also apparent, as the city argues, that the location of city and school park sites is important to a city in terms of the location of its arterial

streets and the need of the city to provide for collective streets to serve the parks and schools; the provision of sidewalks and traffic signals to protect the children and school buses going to the school buildings; and the establishment of connections with sewer, water and electricity lines to service the buildings. Further, the city has a statutory responsibility to provide police and fire protection for the schools within its corporate limits or within a mile of the corporate limits. Ill. Rev. Stat. 1973, ch. 122, pars. 16—8, 16—10.

In *Board of Education v. Surety Developers, Inc.*, 63 Ill. 2d 193, 203-04 (1975), the Illinois Supreme Court recognized that the requirement pursuant to a county zoning ordinance that developers contribute land or money in lieu of land for school facilities bore no reasonable relationship to a special use permitting community sewer and water facilities. Nevertheless, it held that the power of the governmental body was not so restricted and it could impose the conditions to require contribution where the need was "specifically and uniquely attributable" to the developers' activities.

■■  We therefore conclude that a city ordinance adopted incident to the implementation of an official comprehensive plan and map which is designed to provide for adequate and convenient school and park sites in proposed residential subdivisions is in exercise of powers "pertaining to its government and affairs."

The plaintiffs next contend that even if the subject of the ordinance is held to be within defendant's home rule powers, such powers may not extend territorially beyond the city's boundaries.

There is language in *City of Carbondale v. Van Natta*, 61 Ill. 2d 483 (1975), which would seem to support this contention. In referring to the grant of powers to home rule units set out in section 6(a) of article VII of the 1970 Constitution, the majority of the court stated at page 485 of the opinion:

"* * * an examination of the proceedings of the convention shows that the intention was not to confer extraterritorial sovereign or governmental powers directly on home-rule units. The intendment shown is that whatever extraterritorial governmental powers home-rule units may exercise were to be granted by the legislature." (See also *Mulligan v. Dunne*, 61 Ill. 2d 544, 558 (1975).)

However, the court also held that the home rule municipality possessed the same statutory powers to zone extraterritorially as non-home-rule municipalities. See *City of Carbondale v. Van Natta*, 61 Ill. 2d 483, 490.

Certain extraterritorial powers relating to conditioning land use within one mile and a half of municipalities are recognized and granted in the statutes. Thus, section 11—12—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—12—5) provides that the plan commission or

planning department is empowered to recommend a plan that may include reasonable requirements with reference to public grounds, and "[T]he plan, * * * as thereafter adopted in any municipality * * * may be made applicable * * * to land situated within the corporate limits and contiguous territory not more than one and one-half miles beyond the corporate limits and not included in any municipality."

Section 11—12—6 of the Illinois Municipal Code notes that the official plan after being adopted "shall be effective in the municipality and contiguous area * * * ."

Section 11—12—12 of the Illinois Municipal Code provides as material here:

"No map or plat of any subdivision presented for record affecting land (1) within the corporate limits of any municipality which has heretofore adopted, or shall hereafter adopt an ordinance including an official map in the manner prescribed in this Division 12, or (2) within contiguous territory which is not more than one and one-half miles beyond the corporate limits of an adopting municipality, shall be entitled to record or shall be valid unless the subdivision shown thereon provides for * * * public grounds, in conformity with the applicable requirements of the ordinances including the official map * * * ."

■■ The quoted provisions authorize municipalities to adopt a plan and an official map by ordinance which may be applicable in contiguous territory not more than 1½ miles beyond the corporate limits not included in any municipality; and to refuse to recognize a plat of subdivision of such territory if it does not provide for "public grounds" in accordance with the requirements of the ordinance including the official map.[1]

Prior to the enactment of the present sections 11—12—4 *et seq.*, a number of decisions had addressed themselves to the type of regulatory provisions which the city could enforce extraterritorially as conditions precedent to the subdivision of lands and the approval of plats.

In *Petterson v. City of Naperville*, 9 Ill. 2d 233 (1956), in upholding the requirement that the subdividers provide curbs and gutters along the streets in the subdivision and suitable storm water drainage facilities, the court discussed the history of sections 53—1, 53—2, and 53—3 of the prior Cities and Villages Act (Ill. Rev. Stat. 1953, ch. 24, pars. 53—1, 53—2, and 53—3), which were the predecessor sections to the present sections

[1] We note that ordinance 72-20 also purports to govern planned unit developments which are normally regulated pursuant to special use zoning provisions. (See *Board of Education v. Surety Developers, Inc.*, 63 Ill. 2d 193, 201; Ill. Rev. Stat. 1971, ch. 24, par. 11—13—1.1). Zoning powers may not be exercised extraterritorially where the county has a comprehensive zoning ordinance (Ill. Rev. Stat. 1971, ch. 24, par. 11—13—1). However, there is no evidence that the city has applied the requirements of the ordinance to PUDS outside its boundaries.

11—12—4, 11—12—5, and 11—12—12. In *Petterson*, the court determined that more restrictive city requirements for the regulation of subdivisions took precedence over county regulations in the 1½-mile contiguous area. In construing the power of the planning commission to make reasonable requirements for public streets, alleys, public service facilities, parks, playgrounds, school grounds and other public grounds, the court noted that although the statute did not make specific reference to curbs and gutters, the legislature undoubtedly had in mind the complex problems connected with the development of territory contiguous to cities as bearing on the police power, including more than a mere designation of the location and width of the streets.

In *Rosen v. Village of Downers Grove*, 19 Ill. 2d 448 (1960), the Supreme Court was first confronted with an ordinance similar to the one involved here. Under the provisions of the Downers Grove ordinance, one of the plaintiffs had been denied approval of a plat of subdivision for failure to obtain a certificate of compliance from the local board of education and the other plaintiff had obtained approval only after agreeing to deposit the sum of $325 in escrow for each lot sold. Under the facts of the case, the court found it unnecessary to pass upon that portion of the ordinance which required the dedication of land for school grounds. It struck down the provision requiring a certificate of compliance from the local boards of education, and the requirement of a cash payment. (See pages 452-53.) It first noted that the provisions with respect to reasonable requirements for public streets, school grounds and the like appear to be based on a theory that the developer of a subdivision may be required to assume costs specifically and uniquely attributable to his activity which would otherwise be cast upon the public, citing *Petterson v. City of Naperville*. The court further noted:

"But because the requirement that a plat of subdivision be approved affords an appropriate point of control with respect to costs made necessary by the subdivision, it does not follow that communities may use this point of control to solve all of the problems which they can foresee. The distinction between permissible and forbidden requirements is suggested in *Ayres v. The City Council of Los Angeles*, 34 Cal. 2d 31, 207 P.2d 1, which indicates that the municipality may require the developer to provide the streets which are required by the activity within the subdivision but can not require him to provide a major thoroughfare, the need for which stems from the total activity of the community." 19 Ill. 2d 448, 453.

The court found that the boards of education reached the figure of $325 per lot by taking into account factors totally unrelated to the proposed subdivision and further found that the delegation of authority to the

boards of education was not in accordance with the statute nor even the internal provisions of the ordinance.

In *Pioneer Trust & Savings Bank v. Village of Mt. Prospect*, 22 Ill. 2d 375 (1961), the court was directly confronted with the issue of statutory authority for a requirement of land dedication for school grounds, under substantially the same state statute construed in *Rosen v. Village of Downers Grove.* The Supreme Court recognized that the need for recreational and educational facilities may be provided for by ordinance if the need "is one that is specifically and uniquely attributable to the addition of the subdivision and which should be cast upon the subdivider as his sole financial burden." (22 Ill. 2d 375, 381.) The court held, however, that the record did not establish that the need for recreational and educational facilities was specifically and uniquely attributable to the addition of the particular subdivision and that, therefore, the ordinance imposed an unreasonable condition precedent for the approval of a plat.

*Pioneer* has generally been interpreted as indicating that the *dedication* of streets, school grounds and the like is authorized by statute. See Johnston, *Constitutionality of Subdivision Control Exactions: The Quest for Rationale,* 52 Cornell L.Q. 871, 908 (1967); Heyman and Gilhool, *The Constitutionality of Imposing Increased Community Costs on New Suburban Residence Through Subdivision Exactions,"* 73 Yale L.J. 1119, 1134-35 (1964).

In *Board of Education v. Surety Developers, Inc.,* 63 Ill. 2d 193, 201 (1975), the Supreme Court noted that "At no time * * * has this court held that land dedication requirements for school grounds are unauthorized by the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, pars. 11—12—5, 11—12—12) or predecessor statutes." The court noted that to the contrary, the implication of both the *Rosen* and the *Pioneer* decisions are that "land dedication requirements proportioned to the needs specifically and uniquely attributable to the developer's activities would be valid." 63 Ill. 2d 193, 201.

The appellants argue that the provisions of section 11—12—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 11—12—8), which were not in effect at the time *Petterson, Rosen,* and *Pioneer* were decided, negate the implications of those decisions at least with regard to provisions for school and park sites in new developments.

Section 11—12—8 provides, as material here:

"**Compliance of plat with map—Designation of public lands— Approval—Bond—Order—Failure to act upon plat.** The corporate authorities of the municipality shall determine whether a proposed plat of subdivision or resubdivision complies with the official map. To secure such determination, the person requesting the subdivision or resubdivision shall file four copies of a plat thereof

with the clerk of the municipality, and shall furnish therewith four copies of all data necessary to show compliance with all applicable municipal regulations and shall make application for preliminary or final approval of the proposed plat.

Whenever the reasonable requirements provided by the ordinance including the official map shall indicate the necessity for providing for a school site, park site, or other public lands within any proposed subdivision for which approval has been requested, and no such provision has been made therefor, the municipal authority may require that lands be designated for such public purpose before approving such plat. Whenever a final plat of subdivision, or part thereof, has been approved by the corporate authorities as complying with the official map and there is designated therein a school site, park site or other public land, the corporate authorities having jurisdiction of such use, be it a school board, park board or other authority, such authority shall acquire the land so designated by purchase or commence proceedings to acquire such land by condemnation within one year from the date of approval of such plat; and if it does not do so within such period of one year, the land so designated may then be used by the owners thereof in any other manner consistent with the ordinance including the official map and the zoning ordinance of the municipality.

The corporate authorities may by ordinance provide that a plat of subdivision may be submitted initially to the plan commission for preliminary approval. The application for preliminary approval * * * shall indicate * * * proposed dedication of public grounds, if any, * * * but need not contain specifications for proposed improvements. * * * "

These provisions of section 11—12—8 of the Illinois Municipal Code with respect to school and park sites do not appear to have been construed by any court (although this section was noted in *Board of Education v. Surety Developers, Inc.*, in the dissent of Justice Schaefer). The developer contends that this section was added to the Municipal Code for the purpose of limiting to designation and reservation rather than dedication the means by which school and park sites may be obtained. The city, however, contends that the dedications and donations required by ordinance 72-20 are authorized under the Municipal Code, citing *Pioneer* and *Surety*. It contends that section 11—12—8 merely authorizes an additional means of obtaining the necessary public grounds.

The provisions of section 11—12—8 could arguably be viewed as a legislative response to the court decisions in *Rosen* and *Pioneer* and as establishing the statutory policy that a municipality is prohibited from requiring that a subdivider dedicate and donate school or park sites at no

cost to the public. However, the fact that this section was in effect at the time of the decision in *Surety Developers* did not prevent the majority of the court from reaffirming the tests enunciated in *Pioneer* and *Rosen* and from holding that reasonable requirements for school and park dedications may be imposed upon a developer. Presumably, the provisions of the statute, although not referred to in the majority opinion, were before the court inasmuch as the section was referred to in the dissenting opinion, inferentially, as changing the rule of *Pioneer Trust & Savings Bank v. Village of Mt. Prospect,* 22 Ill. 2d 375.

Moreover, the provisions of section 11—12—8 are not clear and unambiguous as plaintiffs contend. The plaintiffs would interpret the phrase "and no such provision has been made therefor," which relates to the necessity of providing school and park sites or other public lands, as referring to a situation in which no such provision has been made by the developer. The city argues with equal reason that it could as well refer to the *city's* failure to make provisions for such sites by failing to pass an ordinance in the nature of ordinance 72-20. The city contends with some reason that section 11—12—8 merely authorizes an additional power to require designation and reservation of public lands in instances where other provisions have not been made to obtain them or in instances in which the city needs a larger site within a particular subdivision than that which the subdivider may be required to dedicate under the ordinance.

We note that dedication requirements and reservation requirements are recognized as two different types of land development regulation. (See Johnston, *Constitutionality of Subdivision Control Exactions: The Quest for a Rationale,* 52 Cornell L.Q. 871, 904-24 (1967); 1967 U. Ill. L.F. 318; Model Land Development Code, §§2—103, 3—201, 3—202 (Proposed Official Draft 1975); Ark. Ann. Stat. §19—2829 (1968).) That the legislature recognized that the implementation of an official comprehensive plan and map may require a combination of land dedications and reservations is implicit, we believe, in the reference to "proposed dedication of public grounds," in the third paragraph of section 11—12—8 and the retention, in section 11—12—5, of statutory language substantially similar to that construed in the earlier cases.

■■ ˙ In view of these facts and the majority opinion in *Surety Developers,* we conclude that the provisions of section 11—12—8 were not intended as a limitation on the city's power to enact an ordinance which imposes "reasonable requirements for public streets, alleys, ways for public service facilities, parks, playgrounds, school grounds, and other public grounds." (See Ill. Rev. Stat. 1959, ch. 24, pars. 53—2, 53—3; see also Ill. Rev. Stat. 1973, ch. 24, pars. 11—12—5, 11—12—12), but as an additional means by which a municipality may implement its plans for orderly growth.

A provision for fees in lieu of land dedication may also be authorized, in our view, if the provision complies with judicial standards.

In *Rosen v. Village of Downers Grove*, 19 Ill. 2d 448, 454, the court stated:

> "And regardless of advantages of flexibility in equalizing financial burdens that might be secured by substituting monetary charges for the dedication of land, or by combining monetary charges with the dedication of land, the plain fact is that the statute does not authorize this technique."

However, the statement was made in a factual context under which the required monetary donation contribution was unrelated to a land dedication requirement and not directly related to the costs specifically and uniquely attributable to the activity of the subdivider. In addition, the requirement was not controlled by the municipality but by the board of education which had no authority to regulate subdivisions. Further, the contribution was taken for purposes unauthorized by the statutes. In a later case, the Illinois Supreme Court referred to *Rosen* and noted that the requirement was held invalid "because the specific technique employed was not authorized by the statute, and also because the term 'educational purposes' was broader than the language of the statute." See *Pioneer Trust & Savings Bank v. Village of Mount Prospect*, 22 Ill. 2d 375, 379. See also *Board of Education v. Surety Developers, Inc.*, 63 Ill. 2d 193, 201.

In *Surety Developers* the court noted the Model Land Development Code of the American Law Institute which "similarly recommends that a county be empowered to authorize the conditioning of a special development permit on the developer's dedication of land for schools, or fees in lieu of dedication, so long as the demands are 'reasonably allocable to the development—measured in terms of the need for such facilities created by the development.' " See 63 Ill. 2d 193, 201. See also *Jenad, Inc. v. Village of Scarsdale*, 18 N.Y.2d 78, 218 N.E.2d 673, 676 (1966); and *Jordan v. Village of Menomonee Falls*, 28 Wis.2d 608, 137 N.W.2d 442, 449 (1965).

■■ We have concluded that the provisions of ordinance 72-20 are authorized by State statute. We further conclude that the ordinance is constitutional whether tested by State or Federal constitutional standards.

The developers essentially mount their constitutional attack on ordinance 72-20 on the basis that it constitutes an exercise of a power of eminent domain, therefore violating several related provisions of the constitution requiring due process, compensation, and trial by jury; and that it constitutes an exercise of the power of taxation therefore violating related provisions of uniformity, special assessments and double taxation.

However, in Illinois the imposition of reasonable regulations as a

condition precedent to the subdivision of land and recording of plats is to be tested by the law applicable to cases involving the exercise of police power (*Petterson v. City of Naperville*, 9 Ill. 2d 233, 249-50). Also, in Illinois the question of the reasonableness of the regulation is dependent on the finding that the burden cast upon the subdivider is specifically and uniquely attributable to his activity. *Pioneer Trust & Savings Bank v. Village of Mount Prospect*, 22 Ill. 2d 375, 379-80. See also *Exchange National Bank v. City of Lake Forest*, 40 Ill. 2d 281, 285-86 (1968) and *Board of Education v. Surety Developers, Inc.*, 63 Ill. 2d 193, 199-202.

■■ Each of the parties has cited authorities from other jurisdictions which appear to provide conflicting results as to the constitutionality of ordinances requiring a subdivider to dedicate public lands or to pay fees for that purpose. Because of the different fact situations and the varying statutes, the outside authorities are not helpful except as they show a modern trend to uphold reasonable exactions, and to strike down those which are unreasonable. See, *e.g., East Neck Estates, Ltd. v. Luchsinger*, 305 N.Y.S. 2d 922, 61 Misc. 2d 619 (1969) (required dedication of shore front land which would decrease value of tract costing $208,000 by over $90,000 struck down as confiscatory); *Kessler v. Town of Shelter Island Planning Board*, 40 App. Div. 1005, 338 N.Y.S. 2d 778, (1972) (refusal of a plat of subdivision on the ground that the entire area is a recreation or school site on the official map amounts to confiscation); *Frank Ansuini, Inc. v. City of Cranston*, 107 R.I. 63, 264 A.2d 910 (1970) (flat percentage dedication requirement held arbitrary as not shown to result from activities specifically and uniquely attributable to the development); *Aunt Hack Ridge Estates, Inc. v. Planning Com.*, 27 Conn. Super. 74, 230 A.2d 45 (1967) (provision that monies collected in lieu of land dedication not limited to uses directly benefiting a subdivision is invalid); *McKain v. Toledo City Plan Com.*, 26 Ohio App. 2d 171, 270 N.E.2d 370 (1971) (requirement of dedication of a strip of land for the purpose of widening a main thoroughfare 700 feet away from and totally unrelated to the proposed subdivision held an improper exercise of the police power and unconstitutional).

The ordinance before us does not have the infirmities illustrated by *Ansuini* and *Aunt Hack* nor do the individual plaintiffs claim that the ordinance has been used against them to make unreasonable requirements of the nature of *East Neck, Kessler,* or *McKain*. The constitutionality of a law cannot be judged on the mere possibility of abuse. *Chicago Real Estate Board v. City of Chicago*, 36 Ill. 2d 530, 553 (1967).

A number of cases in other jurisdictions have upheld the constitutionality of requirements which are similar to ordinance 72-20. See *Billings Properties, Inc. v. Yellowstone County*, 144 Mont. 25, 394

P.2d 182 (1964); *Associated Home Builders v. City of Walnut Creek*, 4 Cal. 3d 633, 484 P.2d 606, 94 Cal. Rptr. (1971); *Jordan v. Village of Menomonee Falls*, 28 Wis. 2d 608, 137 N.W.2d 442 (1965).

The presumption of validity attaches to municipal enactments and regulations adopted under the police power and the burden of proving to the contrary is upon one who asserts the invalidity. See *Schuringa v. City of Chicago*, 30 Ill. 2d 504, 515 (1964); *cert. denied*, 379 U.S. 964, 13 L. Ed. 2d 558, 85 S. Ct. 655.

Here, the record shows that the acreage requirements were based on the formulae contained in the ordinance which were stipulated to be reasonable.

Moreover, the statutory scheme does not indicate an attempt to make developers pay for past inadequacies inasmuch as the city had approximately 10 acres per 1000 population in park and recreational lands and also had sufficient schools to accommodate the current enrollment and had acquired additional sites for schools which had not been built. Further, the trial court found that the requirements of the ordinance were "uniquely and specifically attributable to the development of the lands to which it is applicable." The detailed financial analysis presented by appellees tends to demonstrate that the city is not putting an impossible financial burden on the developers nor on the potential residents of subdivisions or planned unit developments.

The failure to apply the requirement to commercial and industrial uses does not establish an invalid classification since there is a reasonable basis for the differentiation. (See *Village of Roxana v. Costanzo*, 41 Ill. 2d 423, 425 (1968).) Although there was some testimony which indicated that the rapid population growth in the Naperville area was partially attributable to commercial and industrial development in the area, the city council certainly could conclude that the need for school and park sites was more reasonably related to the development of residential complexes than to the development of commercial complexes which could employ persons who resided outside its planning jurisdiction.

The judgment of the trial court is, therefore, affirmed.

Affirmed.

HALLET and DIXON, JJ., concur.