**Robert E. MIDDLEMIST, Jr., et al., Appellants,**

v.

**CITY OF PLYMOUTH, Respondent.**

**No. C4-85-1946.**

Court of Appeals of Minnesota.

May 13, 1986.

S. Todd Rapp, Estes, Parsinen & Levy, Minneapolis, for appellants.

James J. Thomson, Jr., John R. McDonald, Jr., LeFevere, Lefler, Kennedy, O'Brien & Drawz, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal by the landowners from a judgment entered in an action for mandamus and inverse condemnation. The trial court on a motion for summary judgment ruled that respondent City of Plymouth was required to compensate the landowners, but declined to issue a writ of mandamus compelling the city to commence eminent domain or condemnation proceedings, and did not award appellants attorneys fees. The city has filed a petition for review of the judgment. We reverse the judgment insofar as it orders compensation to be paid by respondent.

## FACTS

Appellant Robert Middlemist applied to respondent City of Plymouth in 1981 for a rezoning of a tract of land on which he proposed to build a multi-family residential subdivision, the "Robert Middlemist Sixth Addition." This addition is bisected by a strip of land which is the planned right-of-way for the relocation of Hennepin County Road 9.

The City Planning Commission recommended approval of the preliminary plat, subject to a number of conditions, including the following:

5. No private drive access onto existing County Road 9 or proposed County Road 9.

6. The final plat shall reflect the consolidation of Outlot A with Outlot B into a single outlot for the future County Road 9 right-of-way.

The City Council approved the preliminary plat, subject to the conditions recommended by the Planning Commission.

Following a staff review of the project, a city development official informed Middlemist that the "Outlot" for the new County Road 9 would have to be dedicated to the city before further action. Middlemist refused to dedicate the outlot, claiming dedication had not been discussed. Processing of the proposal continued.

The City Engineer then submitted a memo proposing that, as a prerequisite to approval, "Outlot A shall be deeded to the City of Plymouth." The Planning Commission recommended, and the council voted, approval of the project subject to compliance with the City Engineer's memo, including "deeding" of the outlot to the city.

Middlemist refused to comply with the dedication requirement and brought this action in December 1983. He sought an injunction or writ of mandamus requiring the city to approve the final plat without the dedication of the outlot, and a writ of mandamus to compel eminent domain or condemnation proceedings for the outlot and future county road right-of-way.

The city claimed that the dedication requirement was mandated by a provision of the city code requiring a final subdivision plat to include

[A]n appropriate statement dedicating all streets, alleys and other public areas not previously dedicated.

The proposed County Road 9, as well as the current roadway is characterized as a "minor arterial road" by the Metropolitan Council Transportation Development Guide. Such a road is defined in part as one with "restricted direct land access." The city's conditions for plat approval included a requirement that there be no private driveway access onto County Road 9. The city required installation of traffic barriers between the proposed county road and 43rd Avenue, a contiguous street in the subdivision. It also required berming and landscaping on one side of the new roadway for purposes of "buffering and noise abatement."

Prior to trial, the parties entered into a stipulation by which Middlemist agreed to convey the outlot to the city by warranty deed in exchange for the city's approval of the final plat. Middlemist reserved his claims to just compensation for the outlot. Those claims were to be determined pursuant to the judgment of the court in this action; at the same time, the city agreed to begin eminent domain or condemnation proceedings if Middlemist was "ultimately successful" in the action.

Middlemist brought a motion for summary judgment, arguing that there was no genuine issue of material fact as to the reasonableness of the dedication requirement. The court granted the motion, concluding that the dedication requirement was a denial of equal protection. The court also concluded that

[t]he arterial roadway is not part of Plaintiff's development * * * the county road would be necessary whether this specific plat were developed or not.

Although the court ordered the city to pay just compensation to Middlemist for the outlot, it determined that it lacked the power to order the city to condemn the property, in part because the county was a necessary party. It also denied appellants' motion for attorneys fees.

**ISSUES**

1. Did the trial court err in requiring the city to compensate appellants for the county road right-of-way?

2. Did the trial court err in refusing to order the commencement of condemnation proceedings or in denying appellants' request for attorneys fees under Minn.Stat. § 117.045?

**ANALYSIS**

*1. Compensation for a dedicated public use*

■ A city may require a subdivision developer to dedicate land to public use:

The [subdivision] regulations may require that a reasonable portion of any

proposed subdivision be dedicated to the public or preserved for public use as streets, roads, sewers, electric, gas, and water facilities, storm water drainage and holding areas or ponds and similar utilities and improvements.

Minn.Stat. § 462.358, subd. 2b (1984).

The supreme court has held that a related portion of the predecessor statute was not on its face an unconstitutional taking of property without just compensation. *Collis v. City of Bloomington,* 310 Minn. 5, 17, 246 N.W.2d 19, 26 (1976) (dedication of park land or payment of fee in lieu of land). The court held that the statutory limitation of dedication to a "reasonable portion" of the subdivision prevented an abuse of the police power. *Id.*

■ The trial court did not determine whether the dedication of the outlot for the county road was a reasonable dedication requirement. The court instead found it to be a denial of equal protection. We disagree. The dedication requirement imposed on Middlemist did not deny him equal protection of the laws by treating him differently than other Plymouth landowners not subdividing their land or other subdividers whose land was not located along the county road right-of-way.

Landowners who do not subdivide their land are not subject to any dedication requirements. We believe such a legislative classification between subdividers and other landowners is rationally related to a legitimate government objective. *See State by Spannaus v. Hopf,* 323 N.W.2d 746, 753 (Minn.1982). The supreme court in *Collis* implicitly recognized the greater burden placed on municipal services by subdivision development. Subdivision dedication requirements have survived equal protection challenges even though they do not apply to apartment developments which generate the same population increase. *Associated Home Builders v. City of Walnut Creek,* 4 Cal.3d 633, 94 Cal.Rptr. 630, 484 P.2d 606 (1971).

As to the other asserted class, the statute does not on its face distinguish between subdividers. The statute is obviously applied to subdividers differently depending on the location of their land. Subdividers not located along the County Road 9 right-of-way, however, may be required to dedicate land for other uses, such as holding ponds, utility substations or other streets or roads, which Middlemist is not. If the dedication of the County Road 9 right-of-way is "reasonable" it is no more than is borne by other developers; if unreasonable, it is a "taking," and compensable regardless of equal protection claims.

The city contends it is reasonable to require Middlemist to dedicate land for the county road right-of-way because the percentage of land that Middlemist must dedicate is not more than that required of other developers. Middlemist argues that because the specific public use is not necessitated by his development, the dedication requirement is unreasonable.

■ The court in *Collis* construed the "reasonableness" requirement as follows:

A "reasonable portion" is construed to mean that portion of land which the evidence reasonably establishes the municipality will need to acquire for the purposes stated *as a result of approval of the subdivision.* This is, of necessity, a facts-and-circumstances test, but it is the only kind of test that will consider the myriad of factors which may bear on *a municipality's needs for certain kinds of facilities and the relationship of a particular subdivision to those needs.*

*Collis,* 310 Minn. 5, 17–18, 246 N.W.2d 19, 26 (emphasis added). Since *Collis* requires an examination of the subdivider's contribution to the need for the public use of dedicated land, the test of reasonableness cannot be limited to the percentage of land which a subdivider is asked to dedicate.

■ Appellant's argument, focusing on the fact that plans for the road predated the development plans, is also too restrictive. The supreme court in *Collis* rejected the "extreme approach" of an Illinois decision requiring that "the burden cast upon the subdivider [be] specifically and uniquely attributable to his activity." *Id.* at 11,

246 N.W.2d at 22 (quoting *Pioneer Trust & Sav. Bank v. Village of Mount Prospect*, 22 Ill.2d 375, 380, 176 N.E.2d 799, 802 (1961)).

The court in *Collis* approved a refinement of the "specifically and uniquely attributable" test which notes the difficulty of tracing a need for public services to one particular development:

> On the other hand, a municipality might well be able to establish that *a group of subdivisions* approved over a period of several years had been responsible for bringing into the community a considerable number of people making it necessary that the land dedications required of subdividers be utilized for school, park, and recreational purposes for the benefit of such influx.

*Id.* at 12, 246 N.W.2d at 23 (emphasis added) (quoting *Jordan v. Village of Menomonee Falls*, 28 Wis.2d 608, 617; 137 N.W.2d 442, 447 (1965)).

Some uses, such as freeways, major arterial highways or area-wide sports facilities, may have such a negligible relation to local development that dedication may not, as a matter of law, be required of a particular subdivider. The proposed County Road 9, however, as a "minor arterial road," is designed primarily to serve short, local trips. Thus, although not attributable to the Middlemist addition alone, the need for the road may have a sufficient relation to local development, of which Middlemist's development is a part, to support a dedication requirement.

The *Collis* test of reasonable dedication requirements is a facts-and-circumstances test. We agree with the city that more facts remain to be developed or presented as to the relation between the need for the road relocation and local development in general. Neither designation as a county road nor Metropolitan Council classification as a minor arterial road is determinative. Moreover, the trial court granted summary judgment based on the denial of equal protection; it did not address the reasonableness of the dedication requirement under the *Collis* standard.

We note that the denial of direct access to the proposed county road may pose a "taking" issue separable from the broader issue of the dedication requirement. *See Courteaus, Inc. v. State, Dept. of Highways, by Spannaus*, 268 N.W.2d 65, 67 (Minn.1978) (taking of abutting landowner's direct access to an existing highway is compensable).

### 2. Mandamus and attorneys fees

Since we reverse the trial court's granting of summary judgment on Middlemist's claim for compensation, we need not address the claim of error in regard to the denial of mandamus. Similarly, since appellants have not at this point been successful in compelling the initiation of eminent domain proceedings, they are not entitled to attorneys fees, under either the statute or the stipulation. *See* Minn.Stat. § 117.045 (1984).

### DECISION

The trial court erred in granting summary judgment on the appellants' right to compensation. We do not reach the issues of mandamus and attorneys fees.

Reversed.