**STATE of Missouri ex rel. Robert J. NOLAND et al., Respondents,**

v.

**ST. LOUIS COUNTY et al., Appellants.**

**No. 56605.**

Supreme Court of Missouri,
Division No. 2.

March 13, 1972.

Motion for Rehearing or to Modify Opinion Denied April 10, 1972.

**364**

Cullen Coil, Carson, Inglish, Monaco & Coil, Jefferson City, Carroll J. Donohue, Shulamith Simon, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for respondents.

George F. Gunn, Jr., St. Louis County Counselor, Thomas W. Wehrle, Deputy County Counselor, Robert H. Grant, Asst. County Counselor, Clayton, for appellants.

MORGAN, Presiding Judge.

Appellants, St. Louis County and certain officers and members of its planning commission, challenge the issuance by the trial court of a peremptory writ of mandamus compelling the county to approve a "preliminary plat" of a proposed subdivision submitted by respondents.

In that portion of the unincorporated area of St. Louis County of immediate interest, Conway Road has a sixty (60) foot right-of-way and extends generally in an easterly and westerly direction. Mason Road has a forty (40) foot right-of-way and generally extends in a northerly and southerly direction. The latter crosses Conway Road by means of what is referred to as an "overset" intersection. In other words, a person traveling north on Mason Road and entering the intersection is required to turn right or east on Conway Road for approximately 836 feet; and, at that point, he must turn left or north to continue on Mason Road.

Respondents own approximately thirty (30) acres of land abutting on the south side of Conway Road and on the east side of Mason Road. There was some evidence that it has a present value of $50,000 to $60,000 per acre. Two residences have been on the property for some time. As shown by the exhibits, the landowners proposed to divide the tract into sixteen lots for the construction of fourteen (14) homes in addition to the two already there. The plans provided that entrance to the subdivision would be off of Conway Road. Those streets inside the proposed area were designed in somewhat of a circular

fashion, with several cul de sacs, which allowed for at least semiprivate drives to each residence.

In compliance with the subdivision ordinance of the county, the landowners submitted a "sketch plan" to the planning commission which approved the same on April 8, 1970. Thereafter, as required by the ordinance, the landowners submitted a more detailed plan identified as the "preliminary plat" and which is the subject of this controversy. For purposes of continuity, we mention that the ordinance further provided that if the "preliminary plat" had been approved, the landowners would then have been called on to submit a final plat, conforming to that plat now in question, and a bond or escrow agreement assuring the construction of all improvements called for. However, the commission's approval of the "preliminary plat" was subject to the landowners' compliance with twenty-one (21) conditions. The landowners continue to challenge the validity of three of such conditions which call for them to:

17. Provide a sixty (60) foot right-of-way running diagonally through the tract from the southwest corner to Mason Road northbound from Conway Road. Install a minimum of a twenty-four (24) foot pavement with eight (8) foot earth shoulders and open drainage.

18. Dedicate right-of-way to attain sixty foot right-of-way and improve one-half of a twenty-six foot pavement along existing Conway and Mason Roads. (This reference to Conway Road must be in error as it had a 60 foot right-of-way.)

19. Install street lights along Conway and old and new Mason Road.

The parties generally agree that neither the county council nor the planning commission has adopted a major street plan; but, that both roads are accepted and maintained roadways. Additionally, we do note from the exhibits that the highway department of the county had during 1968 and 1969 designed plans for the future relocation of Mason Road in the area of present concern. Such exhibits further reflect that Mason Road, as it now exists, has many turns and curves both north and south of Conway Road. However, future improvements are contemplated by virtue of the increased traffic thereon anticipated by the construction of an interchange at the intersection of Mason Road and an expressway approximately one mile south of the area now of interest.

Briefly, the respective positions of the parties are: (1) The county contends that the three conditions imposed and now questioned are permitted by the "Subdivision Ordinance of St. Louis County" [Chapter 1005, SLCRO]; and, that the regulatory powers declared therein are consistent with the police power of the county; (2) The landowners submit that the three conditions noted are not authorized by the wording of the subdivision ordinance; but if they are so construed, that they do violence to the constitutional prohibition against the taking of private property without payment of just compensation.

Certainly, the constitutional basis for the argument of each of the parties is recognized and firmly established. Neither the desirability of regulated urban growth nor the preservation of the property rights of an individual can be denied. That a particular factual situation may make it difficult to resolve an answer acceptable to both principles has long been evident. As Mr. Justice Holmes said in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922):

"Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits or the contract and due process clauses are gone.

One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts. (1. c. 413, 43 S.Ct. at 159) * * * When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States. (1. c. 415, 43 S.Ct. at 160) * * * We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change. As we already have said, this is a question of degree—and therefore cannot be disposed of by general propositions." (1. c. 416, 43 S. Ct. at 160)

■ Initially, we should note that the county does have constitutional authority for the ". . . exercise of legislative power pertaining to . . . planning and zoning in the part of the county outside incorporated cities . . ." Section 18(c), Article 6, 1945 Constitution of Missouri, V.A.M.S. Wrigley Properties, Inc. v. City of Ladue, Mo., 369 S.W.2d 397, 401.

Oddly enough, the appellate courts of this state have not had many occasions to consider subdivision legislation. City of Bellefontaine Neighbors v. J. J. Kelley R. & B. Co., Mo.App., 460 S.W.2d 298. However, "the questions inherent in the requirements for public improvements depend on the same criteria as are found in cases involving the exercise of the police power through zoning restrictions' . . ." Rathkopf, "The Law of Zoning and Planning," Chapt. 71, p. 53. Nevertheless, it must be kept in mind that zoning regulations, generally, only limit the use of property, whereas subdivision legislation often

exacts a penalty for approval of a desired use.

■ We look for a moment to the dispute of the parties as to whether or not the conditions listed are actually authorized by the ordinance of St. Louis County. For instance, No. 17 calls for the dedication of a sixty foot right-of-way diagonally across the property as well as paving twenty-four feet thereof and providing surface drainage. In addition to the expense of this requirement, the parties agree that approximately two and one-half acres will be used for the suggested roadway. The landowners add that the subdivision will be "effectively wiped out" by this demand. That portion of the ordinance specifically in point in Subsection 1 of 1005.180, which, in part, provides: "Arrangement of streets shall reasonably conform as nearly as possible to the major street plan, and the developer shall make provision for the extension of major, collector and minor streets. Except for dead-end streets, streets normally shall connect with streets already established . . ." We readily confess that we can find no authority for requiring the "relocation" of Mason Road (which the county identifies as a "collector" street) under the wording of this subsection. In possible anticipation of this answer, the county guides us toward Subsection 16 of 1005.180, which provides: "The Department may require a street to be dedicated to public use in order to provide circulation." In response, the landowners submit that the latter provision "refers only to the dedication of an existing street to public use . . ." In view of the consideration we hereafter give to the reasonableness of all of the conditions listed, we leave open the possibility either interpretation might be acceptable in connection with a particular factual situation. The same is also true as to those subsections of the ordinance dealing with conditions numbered 18 and 19. "A zoning ordinance may be valid generally, yet invalid in its application to a specific tract." Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833,

838[2]. The same rationale applies to a subdivision ordinance. The standard applied in the Huttig case was susceptible to the basic question (1. c. 842)—"is the extent of the public interest and welfare great enough to outweigh the demonstrated detriment to the individual interests . . . ?" Recently, we said in State ex rel. Stoyanoff v. Berkeley, 458 S.W.2d 305, 41 A.L.R.3rd 1386 that: ". . . it is well settled that courts will not substitute their judgments for the city's legislative body, if the result is not oppressive, arbitrary or unreasonable . . ." A comparable approach was taken by the court in City of Bellefontaine Neighbors v. J. J. Kelley R. & B. Co., supra. However, in that case questioned exactions were within the subdivision, plus the fact the landowner had specifically contracted to make the improvements involved.

We have reviewed all of the out of state cases cited, but find none so similar as to justify setting out all of the detailed facts involved. However, the declared standards upon which such decisions are predicated give some guidance, and we mention those most generally followed.

In Brazer v. Borough of Mountainside, 55 N.J. 456, 262 A.2d 857 (1970), the court said, 1. c. 862: "But the plain rationale of these cases is that . . . a subdivider may be compelled only to assume a cost 'which bears a rational nexus to the needs created by, and benefits conferred upon, the subdivision . . .' Beyond that, Planning Board impositions, although purportedly authorized by the Planning Act or the local ordinance, amount to impermissible exactions."

The court in Pioneer Trust and Savings Bank v. Village of Mount Prospect, 22 Ill. 2d 375, 176 N.E.2d 799, 802, stated: "If the requirement is within the statutory grant of power to the municipality and if the burden cast upon the subdivider is specifically and uniquely attributable to his activity, then the requirement is permissible; if not, it is forbidden and amounts to a confiscation of private property in contravention of the constitutional prohibitions rather than reasonable regulation under the police power."

In the California case of Ayres v. City Council of Los Angeles, 34 Cal.2d 31, 207 P.2d 1, 11 A.L.R.2d 503, cited by all parties, the court sought to determine if the conditions imposed were "reasonably related" to the activity of the landowner. Further delineation may be found in Midway Cabinet Fixture Mfg. Co. v. City of San Joaquin, 257 Cal.App.2d 181, 65 Cal.Rptr. 37, 44 (1967), wherein it was said: "Justification of conditions depends upon there being some real relationship between the thing wanted by the landowner from government and the quid pro quo exacted by the government therefor."

In Chapter 71 of the text by Rathkopf, mentioned supra, entitled "Subdivision Control," may be found a review of those cases on the subject as well as the standards presumably followed. From all of which, it may be concluded that the guidelines often used by this court in considering zoning cases properly apply as well in subdivision planning cases with the added element that there must be some "reasonable relationship" between the proposed activity of the landowner and the exactions of government. Whether or not the conditions imposed are within or outside the area of the subdivision would be immaterial so long as they met such a standard.

Finally, we note the testimony of the director of traffic and highways for the county. He stated: "My opinion is that 16 homes [actually 14] would not create the necessary volume of traffic to warrant a major improvement to Mason Road." With this we must agree, but we point out that our conclusion would have been the same even absent such testimony. We do not believe that the relocation of a new Mason Road, the widening and paving of old Mason Road, nor the lighting of Old Mason Road and Conway Road are "reasonably related" to the activity of respond-

ents. If, in fact, such improvements are needed, such need was not generated by the creation of the proposed subdivision.

Mandamus was the proper remedy, State ex rel. Missey v. City of Cabool, Mo., 441 S.W.2d 35.

Finding the judgment of the trial court to have been correct, the same is affirmed.

All of the Judges concur.