The HOME BUILDERS ASSOCIATION
OF GREATER KANSAS CITY et
al., Respondents,

v.

The CITY OF KANSAS CITY,
Missouri, Appellant.

No. 59725.

Supreme Court of Missouri,
en banc.

Sept. 12, 1977.

Rehearing Denied Oct. 11, 1977.

Richard N. Ward, Asst. City Atty., Kansas City, for appellant.

Theodore C. Beckett, Kansas City, for respondents.

DONNELLY, Judge.

In this class action for declaratory and injunctive relief, The Home Builders Association of Greater Kansas City, and certain subdividers of land, challenge the constitutionality of Section 31.32 of Chapter 31 of the General Ordinances of Kansas City, Missouri. Section 31.32 reads as follows:

"(a) Dedication. Subdivision plans shall dedicate land for park uses at locations designated in the comprehensive plan, or the official parks plan adopted by the Board of Parks and Recreation Commissioners or as determined by the subdivider and the staff of City Development and Parks and Recreation, at the rate of four (4) acres per one hundred (100) living units or nine percent (9%) of the merchantable land. When the percentage of merchantable land will result in a tract of less than four (4) acres, the City Plan Commission may require the open space to be located at a suitable place on the periphery of the subdivision, so a more usable tract will result when addi-

tional open space is obtained when adjacent land is subdivided. In all cases, the developer will dedicate such approved park land to the city for park purposes as a condition of final subdivision approval. All land to be dedicated to the City for park purposes shall have the prior approval of the Board of Parks and Recreation Commissioners, and shall be shown and marked on the plan as 'dedicated to Kansas City, Missouri, for parks and/or recreation purposes', and the plat will be so endorsed by the President of the Board of Parks and Recreation Commissioners. When the percentage of merchantable land indicates an open space parcel of less than two (2) acres, or in the opinion of the City Plan Commission will create an insurmountable hardship to the development, the City Plan Commission at its option may require the subdivider, in lieu of dedication of open space to pay a sum of money per planned housing unit in lieu of dedication.

"(b) Cash in lieu of land dedication. When the dedication of park land, as required by this section has been determined to work an undue hardship on the development, or the tract size is inadequate for the intended purpose in the opinion of the City Plan Commission, the subdivider shall deposit with the City Treasurer for the Parks and Recreation Acquisition and/or Development Trust Fund prior to receiving a building permit, a cash payment without recourse or the right of recovery, equal to sixty dollars multiplied by a designed number of living units in the subdivision, less a credit that any land actually dedicated for park purposes, bears to the proportion of total land required for park purposes in subsection (a) hereof. Such funds shall be used for the acquisition, development or improvement of a public park generally, within one half-mile of the periphery of the subdivision by the Parks and Recreation Department as authorized by the City Charter.

"(c) Private development and operation of park-recreational open space. The applicant may comply with the requirements of this section to furnish land for recreational purposes by providing an area with a community unit project, group housing project, GP district or any other planned district under the zoning ordinance provisions, which shall meet the minimum standards as required in section 31.32(a) and (2) provided that such area shall be developed and maintained by the subdivider or by the lot owners in the subdivision as private property under a legal arrangement approved by the city counselor as adequate to insure its continued operation and maintenance.

"The above provisions of this subsection (c) shall not apply to any subdivision consisting of single occupancy, single lots."

Trial was had without a jury and the Circuit Court of Jackson County entered judgment which reads in part as follows:

"The fixed percentage dedication requirement of Sec. 31.32(A) is an arbitrary requirement unsupported by any showing of necessity and as such constitutes an unconstitutional taking of Plaintiffs' property without compensation in violation of Article I, Sections 10 and 26 of the Constitution of the State of Missouri and the Fifth and Fourteenth Amendments to the Constitution of the United States and is declared to be unconstitutional and void."

An appeal was then taken to this Court by the City of Kansas City.

This case represents another episode in a series of clashes between the exercise of police power by a city for the purpose of protecting the health and welfare of its citizens and provisions that private property shall not be taken for public use without just compensation. For a discussion of the general question, see Vol. 1, Nichols' Law of Eminent Domain, § 1.42. For a discussion of the narrower question attending forced dedications for the purpose of preserving open space, see Vol. 2, Nichols' Law of Eminent Domain, § 6.3511 and the cases collected in Annotation, *Validity and Construction of Statute or Ordinance Requiring Land Developer to Dedicate Portion of Land for Recreational Purposes, or Make Payment in Lieu Thereof*, 43 A.L.R.3d 862.

See also: Johnston, *Constitutionality of Subdivision Control Exactions: The Quest for a Rationale,* 52 Cornell Law Quarterly 871 (1967); Landau, *Urban Concentration and Land Exactions for Recreational Use: Some Constitutional Problems in Mandatory Dedication Ordinances in Iowa,* 22 Drake Law Review 71 (1972); and Ellickson, *Suburban Growth Controls: An Economic and Legal Analysis,* 86 Yale Law Journal 385, 481–486 (1977).

In 1926, the United States Supreme Court decided the landmark case of *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303. The Court upheld a zoning ordinance and significantly said (at pages 386 and 387, 47 S.Ct. at page 118):

"Building zone laws are of modern origin. They began in this country about twenty-five years ago. Until recent years, urban life was comparatively simple; but with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world, it is impossible that it should be otherwise. But although a degree of elasticity is thus imparted, not to the *meaning,* but to the *application* of constitutional principles, statutes and or-

dinances, which, after giving due weight to the new conditions, are found clearly not to conform to the Constitution, of course, must fall."

The Court then declared (at page 395, 47 S.Ct. at page 121) the test of constitutional validity of an ordinance to be whether its "provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."

In 1961, the Supreme Court of Illinois decided the case of *Pioneer Trust & Savings Bank v. Mount Prospect,* 22 Ill.2d 375, 176 N.E.2d 799. The Court held an ordinance requiring a subdivider to dedicate a portion of land for public use invalid, and applied the following test (176 N.E.2d 799, at 802):

". . . If the requirement is within the statutory grant of power to the municipality and if the burden cast upon the subdivider is specifically and uniquely attributable to his activity, then the requirement is permissible; if not, it is forbidden and amounts to a confiscation of private property in contravention of the constitutional prohibitions rather than reasonable regulation under the police power."

In 1971, the Supreme Court of California decided the case of *Associated Home Builders, Inc. v. Walnut Creek,* 4 Cal.3d 633, 94 Cal.Rptr. 630, 484 P.2d 606. The Court held an ordinance requiring dedication of land or payment of fees as a condition to approval of a subdivision map valid, and held (94 Cal.Rptr. 630, at 634, 484 P.2d 606, at 610) that the statute authorizing it "can be justified on the basis of a general public need for recreational facilities caused by present and future subdivisions. The elimination of open space in California is a melancholy aspect of the unprecedented population increase which has characterized our state in the last few decades. Manifestly governmental entities have the responsibility to provide park and recreation land to accommodate this human expansion despite the inexorable decrease of open space available to fulfill such need."

In 1972, in *State ex rel. Noland v. St. Louis County,* 478 S.W.2d 363, 367 (Mo.),

this Court held that "there must be some 'reasonable relationship' between the proposed activity of the landowner and the exactions of government." This Court then found that the requirements that the subdivider relocate a new road and widen and pave an old road were not *reasonably related* to the activity of the subdivider.

■■■■ We have concluded that the *Pioneer Trust* rule, in view of *Euclid*, supra, and *Noland*, supra, is too restrictive and should be modified. The fact that a subdivision merely threatens to "contribute" to a community need for open space should not exempt it from bearing a fair share of the burden of meeting the need. We adopt the following rule in Missouri as to mandatory dedications for recreational purposes: If the requirement is within the statutory grant of power to the municipality and if the burden cast upon the subdivider is *reasonably* attributable to his activity, then the requirement is permissible; if not, it is forbidden and amounts to a confiscation of private property in contravention of the constitutional prohibitions rather than reasonable regulation under the police power. *Insofar as the establishment of a subdivision within a city increases the recreational needs of the city, then to that extent the cost of meeting that increase in needs may reasonably be required of the subdivider.*

■■■■ We turn then to a consideration of the issues in this case. We must hold the trial court erred because it placed the burden of proof on the wrong party. An ordinance enacted by the legislative body of a city pursuant to the police power is presumed to be valid. The person (or persons) challenging the constitutionality of the ordinance on the ground of unreasonableness has the burden of proving unreasonableness. *Flora Realty & Investment Co. v. City of Ladue*, 362 Mo. 1025, 1040, 246 S.W.2d 771, 778 (banc 1952); *Euclid v. Ambler Realty Co.*, supra. The court placed the burden of justifying its ordinance on the City of Kansas City. It erred in this regard.

Accordingly, the case must be remanded for new trial. We suggest that on re-trial the attorneys for the subdividers introduce evidence on the fairness of specific exactions as to specific properties. Cf. *Euclid v. Ambler Realty Co.*, supra, 272 U.S. 365, at 397, 47 S.Ct. 114; *Collis v. City of Bloomington*, 246 N.W.2d 19, 27–28 (Minn.1976); and *State ex rel. Noland v. St. Louis County*, supra.

The judgment is reversed and the cause remanded.

MORGAN, C. J., and BARDGETT, HENLEY and SEILER, JJ., concur.

FINCH, J., dissents in separate dissenting opinion filed.

RENDLEN, J., dissents and concurs in separate dissenting opinion of FINCH, J.

FINCH, Judge, dissenting.

I respectfully dissent.

The judgment entered herein by the trial court contained these findings:

"1. The requirement of Sec. 31.32 of the subdivision regulations of the Code of General Ordinances of the Defendant City, that developers dedicate land to Defendant as a pre-requisite for approval of a subdivision plat is in accordance with statutory authority vested in Defendant City.

"2. Sec. 89.410 V.A.M.S. specifically authorizes Defendant City to require the dedication of land for park purposes as a pre-requisite to approval of a subdivision plat.

"3. The Defendant's requirement that a developer dedicate some land for park and recreational use prior to approval by City authorities of the proposed development plat is a lawful and constitutional exercise of the police power of the Defendant.

"4. The Defendant's requirement that a developer dedicate land for park and recreational use is not unconstitutional because some legislative functions are delegated to the Board of Park and Recreation Commissioners of Defendant City.

"5. The provisions of Sec. 31.32(C) do not create an unconstitutionally arbitrary classification in violation of either the State or Federal Constitutions.

"6. The park land dedication requirement is not unconstitutional in that it limits growth in the City and violates Plaintiffs' constitutional right to travel.

"7. The fixed percentage dedication requirement of Sec. 31.32(A) is an arbitrary requirement unsupported by any showing of necessity and as such constitutes an unconstitutional taking of Plaintiffs' property without compensation in violation of Article I, Sections 10 and 26 of the Constitution of the State of Missouri and the Fifth and Fourteenth Amendments to the Constitution of the United States and is declared to be unconstitutional and void."

It then enjoined Kansas City from compelling plaintiffs to comply with Sec. 31.-32(A) as a condition precedent to approval of subdivision plats submitted by plaintiffs.

Kansas City appealed from that judgment. Plaintiffs did not. In commenting on these facts and the issues presented by this appeal, the brief filed in this court on behalf of Kansas City states as follows:

"This appeal is from the Trial Court's judgment permanently enjoining Appellant from requiring Respondents to comply with Section 31.32(a) of the Subdivision Regulations, as a condition precedent to the approval of subdivision plats submitted by individual Respondents.

"It is important to note some of the holdings of the Trial Court below not appealed by Appellant nor challenged by Respondents and therefore not in issue on this appeal. The court concluded inter alia that:

1. Section 31.32 of the Subdivision Regulations requiring land developers to dedicate land to Appellant as a prerequisite for subdivision plat approval is within the statutory authority vested in Appellant (T. 124).

2. Section 89.410 V.A.M.S. authorizes Appellant to require the dedication of land for park purposes as a prerequisite to approval of a subdivision plat (T. 124).

3. The requirement that a developer dedicate some land for park and recreational use prior to approval by Appellant of the proposed development plat is a lawful and constitutional exercise of the police power of Appellant (T. 124).

"Although the above holdings of the Trial Court are not herein contested on this appeal, they are relevant to the sole holding of the Trial Court which is the subject matter of this appeal."

The principal opinion reverses and remands this case, holding that the trial court erred because it placed the burden of proof as to reasonableness or unreasonableness of the ordinance provision on the wrong party. It obviously so concludes on the premise that when the trial court stated in paragraph 7 of its findings that the fixed percentage requirement "is an arbitrary requirement unsupported by any showing of necessity * * *," it was saying that the City had the burden on that issue and had not sustained it. I am not sure that is what the trial court meant. This case was submitted on a lengthy stipulation of facts (113 pages of transcript, plus a deposition incorporated by agreement into the stipulation). It may be that the court was saying that under the evidence the arbitrary across the board requirement of a dedication of 9 per cent of usable space (or a dollar alternative) was not necessary or proper and, hence, the provision was bad. If that is what the court meant, it was not saying that Kansas City had a burden of proof which it did not sustain. However, I suppose that a reversal and remand does no particular harm as it does permit the parties to offer any additional proof and the court can then make its findings and enter its judgment in light of the decision that it cannot place the burden of proof on Kansas City.

While the general rule is that one attacking reasonableness of an ordinance has the burden of proof, I am inclined to the view that the City had the burden of proceeding with the evidence in this case wherein plaintiffs established that the ordinance did what both federal and state constitutions prohibit, namely, takes title to property of citizens without paying compensation therefor. That introduces an additional element not present in the usual case where the issue is merely whether the statutory enact-

ment is reasonable. The law on its face does that which is constitutionally prohibited and the ordinance can stand only if, as an exercise of the police power, it is reasonable and necessary to mandate a divestment of title to property without compensation to protect the health and safety of the public. Under such limited circumstances, it would be proper, in my judgment, to require the City to go forward with the evidence. Under such a rule, the reversal and remand on the basis given would not be required.

The part of the principal opinion to which I most strongly dissent is the paragraph just preceding the portion wherein the judgment is reversed for placing the burden of proof on Kansas City. In that paragraph appears the following:

"We adopt the following rule in Missouri as to mandatory dedications for recreational purposes: If the requirement is within the statutory grant of power to the municipality and if the burden cast upon the subdivider is *reasonably* attributable to his activity, then the requirement is permissible; if not, it is forbidden and amounts to a confiscation of private property in contravention of the constitutional prohibitions rather than reasonable regulation under the police power. *Insofar as the establishment of a subdivision within a city increases the recreational needs of the city, then to that extent the cost of meeting that increase in needs may reasonably be required of the subdivider.*"

The foregoing paragraph, in my view, undertakes to establish a rule for the future concerning an issue not presented by this appeal. Plaintiffs' petition alleged that Sec. 31.32 of the Kansas City ordinance, by requiring plaintiffs to dedicate land to the City, takes property from plaintiffs without the payment of just compensation, thereby violating Art. 1, §§ 10 and 26 of the Missouri Constitution and the fifth amendment to the United States Constitution (as made applicable to the states through the fourteenth amendment).[1] The trial court ruled

that issue against plaintiffs in paragraph 3 of its findings but plaintiffs have not appealed therefrom or argued that we decide the case on that basis. Instead, they acquiesced in that ruling. The principal opinion seems to recognize that its announcement of a rule which is to apply in the future is not in response to any issue raised on appeal because after stating that rule the opinion says: "We turn then to a consideration of the issues in this case." Under such circumstances, particularly when what is said is not necessary to the disposition made, we should not gratuitously "rule" upon such an important and far reaching question by endorsing the general proposition that the taking of a developer's land for park purposes without compensation but rather by forced dedication is constitutional. That matter is simply not before us for decision. Accordingly, the pronouncement in the majority opinion could be characterized as dictum. However, it is couched in mandatory and unambiguous language and is likely to be viewed as guidance by the lower courts who are bound by our decisions and by the public which relies upon them. I question whether we need to or should take that risk.

In my opinion, such a fundamental question as that discussed and purportedly ruled in the majority opinion should be reserved for a case where the issue is squarely raised on appeal. This is particularly true in view of the fact that reported cases, only a few of which are mentioned in the principal opinion, have reached varying results and text writers and law review articles have expressed divergent viewpoints on the subject.

Reserving this question of constitutionality and, hence, of what we will hold permissible in ordinances such as the one here in question would be consistent with the long-standing policy of restraint practiced by this court. The rationale of this policy is that, particularly with fundamental questions involving interpretation of our constitution, all issues should be fully briefed by

1. It should be noted that the ordinance in question does not simply require that some portion of a subdivision be reserved for park and recreational use of occupants of the subdivision with title to be vested in those who own property therein. It requires that title pass to Kansas City for a park which is public and available to everyone.

the parties in a true adversary context and supplemental amicus briefs considered if possible. Such matters ought not be even purportedly resolved in dictum in a case wherein the issue has been, at most, casually addressed by the parties.

The desirability of full adversary briefing on fundamental questions is illustrated by reference to one of the authorities cited with favor in the majority opinion. In Vol. I, Nichols' Law of Eminent Domain, § 1.42, p. 104, the author points out the difference between taking title to property by eminent domain and exercise of the police power. He states:

"The distinguishing characteristic between eminent domain and the police power is that the former involves the *taking* of property because of its need for the public use while the latter involves the *regulation* of such property to prevent the use thereof in a manner detrimental to the public interest."

Subsequently, the same author, *Id.*, § 142[1], p. 114, says:

"The close connection which exists between the police power and the public health, morals and safety has led many authorities to classify any legislation which has for its object the public health, morals or safety as an exercise of the police power, even if it appears on its face to authorize the levy of a tax or the taking of property for the public use. However, it is universally conceded that when land or other property is actually taken from the owner and put to use by the public authorities, the constitutional obligation to make just compensation arises, however much the use to which the property is put may enhance the public health, morals or safety."

I do not cite this language as authority for any position on the matter for it is not my purpose to take or indicate any position herein. Instead, my purpose is simply to point out that the above language clearly indicates the author's recognition of the complexity of the interplay between the police power and the prohibition against taking without compensation. That the language quoted is not noted or distin-

guished by the majority opinion demonstrates the problems inherent in any attempt to render an opinion without full briefing by genuinely adverse parties. The reliance by appellate courts on the advocacy of the attorneys practicing before them is great because only by this means can there be some assurance that all arguments for each side have been raised for our consideration.

Other examples of arguments which might have been placed before the court had we been squarely presented with the matter purportedly resolved in the majority opinion are not difficult to envision. For example, if one is laying out a new subdivision in Kansas City, he must dedicate 9 per cent of his usable land space, the theory being that the new housing creates additional park needs and the requirement is proper. However, if a developer decides to erect a large highrise apartment building, or several of them, without establishing a new subdivision, he will not be required to dedicate land for park purposes. Additional land, if needed as a result of these developments, would be acquired by conventional methods, usually purchase and, if need be, condemnation.

As further evidence of the importance of refraining from gratuitously deciding an issue not presented by or necessary to this appeal, I would point out that the implications of the rule stated in the principal opinion are not limited to ordinances which require dedication of land for park purposes. For example, in *Pioneer Trust & Savings Bank v. Mount Prospect*, 22 Ill.2d 375, 176 N.E.2d 799 (1961), cited in the principal opinion, the city sought on the basis of the police power to require a subdivider to convey without payment therefor 6.7 acres for use of the school district as an elementary school site. Applying what is said in the principal opinion with only the substitution of the word educational for recreational, our rule in such a situation would read as follows:

"If the requirement is within the statutory grant of power to the municipality and if the burden cast upon the subdivider is reasonably attributable to his activity, then the requirement is permissible; if

not, it is forbidden and amounts to a confiscation of private property in contravention of the constitutional prohibitions rather than reasonable regulation under the police power. Insofar as the establishment of a subdivision within a city increases the educational needs of the city, then to that extent the cost of meeting that increase in needs may reasonably be required of the subdivider."

In some cases and articles on this subject, it has been suggested that if it is constitutionally permissible under the police power to take property without compensation (by mandated dedication) for park needs reasonably attributable to the subdivision, it would be permissible to take additional land in the same manner for a new police station and for a new fire station, if the need therefor can be said to be reasonably attributable to the subdivision. It is obvious that the language in the principal opinion would fit by simply substituting *police* or *fire* for the word *recreational*. Is such permissible when that policy would not be available or utilized in areas where new subdivisions were not being platted?

The foregoing illustrations of situations prospectively affected by the proposed ruling are not intended to be all inclusive and I have not attempted to address the merits of whether the proposed rule should be applicable thereto. I have attempted only to demonstrate that the rule which the principal opinion would promulgate has very far reaching ramifications and that we should reserve action thereon at this time since it is wholly unnecessary to the decision which the principal opinion reaches.