LEXINGTON–FAYETTE URBAN COUNTY GOVERNMENT; Lexington–Fayette Urban County Planning Commission; Mr. W. Rush Mathews, Mrs. Preston Madden, Mr. L.T. Flynn, Mrs. Marty Howard, Mr. Samuel Milner, Mr. John M. Brown, Mr. Alex Boone, Mrs. Rose Lucas, Mr. Walter W. May, Mr. Roy Walton, and Dr. Thomas Cooper, in their Official Capacities as Members of the Lexington–Fayette Urban County Planning Commission, Appellants,

v.

F.W. SCHNEIDER and Hi Acres Development Company, a Kentucky Corporation, Appellees.

No. 91–CA–2183–MR.

Court of Appeals of Kentucky.

Oct. 9, 1992.

Discretionary Review Denied by Supreme Court April 14, 1993.

Edward W. Gardner, Christine N. Westover, Lexington, for appellants.

William M. Lear, Jr., Rena Wiseman, Stoll, Keenon & Park, Lexington, for appellees.

Before HOWERTON, HUDDLESTON and MILLER, JJ.

HOWERTON, Judge.

This is an appeal from a judgment of the Fayette Circuit Court directing the Lexington–Fayette Urban County Planning Commission to approve a development plan without requiring the developer to dedicate land and construct a bridge on the property.

Hi Acres Development Company and F.W. Schneider ("Hi Acres") owned 85 acres in southwestern Fayette County, just north of the Jessamine County line between Harrodsburg Road and Clays Mill Road and fronting on Old Higbee Mill Road. In 1977, Hi Acres sought a zone

change from A–U (agricultural-urban) to R–1D (single family residential) in order to develop 55 acres as Clemens Heights Subdivision. The zone change was approved by the Planning Commission and some 200 homes were constructed. In 1989, Hi Acres sought a zone change in order to develop an additional 33 lots on an 18–acre tract at the southern end of this property. The developer had postponed development of the 18 acres in 1977 at the request of the Planning Commission because an outer freeway was anticipated in the area along the Fayette–Jessamine County line.

South Elkhorn Creek runs through this 18–acre tract. Trace Boulevard dead ends into this tract on the east. This road was designed to serve as a collector street and will eventually extend from Harrodsburg Road on the west over to Nicholasville Road and beyond on the east. The idea for a collector road in this general area was shown on the comprehensive plan from as far back as 1974. The Planning Commission sought to have Hi Acres dedicate land and construct a portion of Trace Boulevard to collector street standards through this tract. However, this would entail construction of a bridge across South Elkhorn Creek at a cost of $130,000 according to Planning Commission estimates, or up to $252,000 according to the estimate of Hi Acres' engineers.

When Hi Acres sought a zone change for the initial 55 acres, preliminary plans were submitted by Hi Acres showing a road in compliance with the comprehensive plan across South Elkhorn Creek. However, neither the initial development of Clemens Heights nor the development of the surrounding area required the construction of this collector street in 1977. The residents of Clemens Heights had access through Old Higbee Mill Road. It was not until development was in full swing in Clemens Heights and neighboring subdivisions that there was any impetus to proceed with the extension of Trace Boulevard across Hi Acres' property.

According to the Planning Commission's brief, other developers have dedicated land and constructed the sections of Trace Boulevard which run through their subdivisions. Hi Acres proposed to have a road

come into the 18–acre tract from Trace Boulevard and then make a right angle turn and form a cul-de-sac to the south. Hi Acres contended it had no need of the collector street for its subdivision because the residents could have ingress and egress through existing Calevares Drive and the section of Trace which currently dead ends on the east side of the property. Hi Acres was willing to dedicate sufficient property and build Trace Boulevard to collector standards to the edge of the proposed development and to contribute to the construction of the bridge on a pro rata basis, based on either the number of homes served or trips generated. Hi Acres did not believe that it should be solely responsible for the bridge construction merely because the creek happens to run across its property. The Planning Commission argued that merely because there is a unique topographical feature which makes the construction of the collector street more costly, this should not relieve the developer when he would ordinarily be obligated for improvements. The Planning Commission conditioned its approval of the zone change on construction of the bridge. Hi Acres appealed the decision to the Fayette Circuit Court which ruled in its favor. The trial court found the action of the Planning Commission arbitrary and capricious for the reason that the "number of actual beneficiarys [sic] of this bridge (estimated at over 2,000) is disproportional to the number of units that will be developed by [Hi Acres]."

On appeal, the Planning Commission argues that it was proper to condition the zone change on construction of the bridge and that the cost of the collector street and bridge must be considered in the context of the entire Clemens Heights Subdivision and not merely on the 33 lots.

KRS 100.281(4) provides that subdivision regulations are to be based on the comprehensive plan and that the regulations shall contain "[s]pecifications for the physical improvements of streets ... and the extent to which they shall be installed or dedicated as conditions precedent to approval of any plat." Certainly, KRS 100.281 gives the Planning Commission authority to require a developer to dedicate property for streets

and public improvements and perhaps to make the improvements, as a condition precedent to subdivision approval. Indeed, Hi Acres constructed a portion of Twain Ridge Road, another collector street through Clemens Heights, to the north of Trace Boulevard.

■ However, a developer should not be made to contribute to the cost of public improvements in an amount that far exceeds the anticipated use necessitated by his/her development. The standard for taking of property of this nature was enunciated in *Lampton v. Pinaire*, Ky.App., 610 S.W.2d 915, 919 (1980), when the court stated:

> So long as the taking of a portion of the land, whether on the exterior or from the interior, is based on the reasonably anticipated burdens to be caused by the development, the dedication requirements as a condition precedent to plat approval are not an unconstitutional taking of land without just compensation.

The court in *Lampton* also stated that local governments are not obligated to develop private property and that public policy requires developers for profit to "bear the cost of additional public facilities made necessary by the development." *Id.* In this case, the continuation of Trace Boulevard as a collector street is not made necessary by the development of these 18 acres because the residents may use either Calevares or existing Trace Boulevard. Certainly, the residents will contribute to the traffic flow on these streets, but these 33 lot owners are expected to account for only 2 percent of the projected usage of the bridge and, in fact, Twain Ridge and Trace Boulevard together are projected to serve 2,900 residents. Putting the cost of the bridge on the developer to be spread among these 33 lots is grossly out of proportion to the projected use these lot owners will get from the bridge.

■ We are mindful that this state has not adopted so narrow a test as the "uniquely attributable test," wherein a developer is obligated to pay for such a public improvement in its entirety only if the need for the improvement is solely attributable to his development. *See Pioneer Trust & Savings Bank v. Village of Mount Pros-*

*pect*, 22 Ill.2d 375, 176 N.E.2d 799 (1961); *Wald Corp. v. Metropolitan Dade County*, 338 So.2d 863 (Fla.Dist.Ct.App.1976). But there must be a reasonable connection between the condition placed on the developer and the purpose of the condition—to convey traffic from neighborhood to neighborhood and from arterial to local streets. *See Nollan v. California Coastal Commission*, 483 U.S. 825, 837, 107 S.Ct. 3141, 3148-49, 97 L.Ed.2d 677 (1987).

■ While it is true the Planning Commission did not create the creek in that spot, the developer should not be saddled with an expense not borne by other developers in order to provide a road in which the lion's share of the use will come from the surrounding neighborhoods rather than from the entire Clemens Heights Subdivision. The trial court was correct in its ruling that the Planning Commission's conditioning the zone change on construction of the bridge was arbitrary and capricious. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Com'n*, Ky., 379 S.W.2d 450, 456 (1964).

Further, the Planning Commission contends the collector street and bridge must be viewed in the context of the entire Clemens Heights Subdivision and not merely the 33 lots sought to be developed. The Planning Commission argues that Hi Acres knew since it first began development of Clemens Heights that the road was anticipated, and thus the cost of the bridge should have been apportioned among the entire subdivision—264 lots total. Had this been done, the cost would have amounted to between $490 and $950 per lot, depending on whether the Planning Commission's estimate or the developer's estimate is accepted. Hi Acres had initially planned to develop this 18 acres concurrently with the 55 acres in 1977, but delayed this at the request of the Planning Commission because of the uncertainty of the proposed outer freeway. However, even if the two tracts had been developed concurrently, Clemens Heights alone would not have necessitated the construction of the extension of Trace Boulevard.

■ While the Planning Commission urges us to view this in a broader sense—

that Clemens Heights alone would not necessitate this collector street, but it must be viewed as part of community transportation planning—we see that one subdivision is being asked to bear an unreasonable burden vis a vis the use it will get of the street and the burden it will contribute to the traffic congestion in the area. Much of southwest Fayette County will benefit from having Trace Boulevard as a circumferential collector between arteries. We do not infer that planning commissions cannot require developers to construct collector streets, but the burden for public improvements must bear a reasonable relationship to the benefits conferred on the subject development, to the overall benefit to the surrounding neighborhoods, and to the need for improvements necessitated by the development. *Cf. State, ex rel. Noland v. St. Louis County,* 478 S.W.2d 363, 367 (Mo.1972); *Brazer v. Borough of Mountainside,* 55 N.J. 456, 466, 262 A.2d 857, 862 (1970).

While local governments barely have funds for street maintenance, much less construction, they nevertheless may not put unreasonable burdens on developers as a condition precedent to approval of a subdivision. It is one thing to require land dedication and street construction to collector street specifications, but quite another thing to require construction of an expensive public improvement of any type. Hi Acres can only recoup its development costs through the sale of lots. The total cost for the bridge using either estimate is an unreasonable burden and an unnecessary improvement for the residents of Clemens Heights.

The judgment of the trial court holding null and void the Planning Commission's conditioning the zone change on Hi Acres' constructing the bridge is affirmed.

MILLER, J., concurs.

HUDDLESTON, J., dissents without separate opinion.