RENDERED: AUGUST 22, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0476-DG

BOONE DEVELOPMENT, LLC; VIA                        APPELLANTS
VITAE DEVELOPMENT, LLC D/B/A
JAMES MONROE HOMES


ON REVIEW FROM COURT OF APPEALS
NO. 2021-CA-0099
V.                      JESSAMINE CIRCUIT COURT
NO. 20-CI-00494


NICHOLASVILLE BOARD OF                     APPELLEES
ADJUSTMENT; HAROLD E. SMITH,
ACTING CHAIRMAN; ALEX LYTTLE,
MEMBER; JENNIFER CARPENTER,
MEMBER; JIM PARSONS, MEMBER;
JIMMY WELLS, MEMBER; MICHAEL
EAKINS, IN HIS OFFICIAL CAPACITY AS
ACTING/INTERIM PLANNING
DIRECTOR/ADMINISTRATIVE OFFICER
FOR THE CITY OF NICHOLASVILLE
PLANNING COMMISSION; PAULA ELDER,
MEMBER; TANYA BOLTON, MEMBER; THE
CITY OF NICHOLASVILLE PLANNING
COMMISSION; TIM CROSS IN HIS
INDIVIDUAL CAPACITY AND OFFICIAL
CAPACITY AS ENGINEER FOR THE CITY
OF NICHOLASVILLE PLANNING
COMMISSION; WILLIAM WAYNE HAYDEN,
MEMBER


AND


2022-SC-0477-DG


BOONE DEVELOPMENT, LLC; VIA VITAE             APPELLANTS
DEVELOPMENT, LLC  D/B/A JAMES
MONROE HOMES

ON REVIEW FROM COURT OF APPEALS
NO. 2021-CA-0411
V.                JESSAMINE CIRCUIT COURT
NO. 20-CI-00494


COMMONWEALTH OF KENTUCKY EX REL.          APPELLEES
RUSSELL COLEMAN, ATTORNEY
GENERAL; TANYA BOLTON, IN HER
OFFICIAL CAPACITY AS A MEMBER OF
THE NICHOLASVILLE BOARD OF
ADJUSTMENT; JENNIFER CARPENTER, IN
HER OFFICIAL CAPACITY AS A MEMBER
OF THE NICHOLASVILLE BOARD OF
ADJUSTMENT; CITY OF NICHOLASVILLE
PLANNING COMMISSION; TIM CROSS, IN
HIS INDIVIDUAL CAPACITY AND IN HIS
OFFICIAL CAPACITY AS ENGINEER FOR
THE CITY OF NICHOLASVILLE PLANNING
COMMISSION; MICHAEL EAKINS, IN HIS
OFFICIAL CAPACITY AS INTERIM/ACTING
PLANNING DIRECTOR/ADMINISTRATIVE
OFFICER FOR THE CITY OF
NICHOLASVILLE PLANNING COMMISSION;
PAULA ELDER, IN HER OFFICIAL
CAPACITY AS A MEMBER OF THE
NICHOLASVILLE BOARD OF
ADJUSTMENT; WM. WAYNE HADEN, IN
HIS OFFICIAL CAPACITY AS A MEMBER OF
THE NICHOLASVILLE BOARD OF
ADJUSTMENT; ALEX LYTTLE, IN HIS
OFFICIAL CAPACITY AS A MEMBER OF
THE NICHOLASVILLE BOARD OF
ADJUSTMENT; JIM PARSONS, IN HIS
OFFICIAL CAPACITY AS A MEMBER OF
THE NICHOLASVILLE BOARD OF
ADJUSTMENT; HAROLD E. SMITH, IN HIS
OFFICIAL CAPACITY AS ACTING
CHAIRMAN AND MEMBER OF THE
NICHOLASVILLE BOARD OF
ADJUSTMENT; NICHOLASVILLE BOARD
OF ADJUSTMENT; AND JIMMY WELLS, IN
HIS OFFICIAL CAPACITY AS A MEMBER OF
THE NICHOLASVILLE BOARD OF
ADJUSTMENT

2

**OPINION OF THE COURT BY JUSTICE NICKELL**

**<u>AFFIRMING IN PART AND REVERSING IN PART</u>**

We granted discretionary review to consider the constitutionality of the appeal bond requirement set forth in KRS[1] 100.3471. For purposes of oral argument, we consolidated this appeal with two others presenting a similar constitutional challenge. *Bluegrass Trust v. Lexington-Fayette Urban County Government*, ___ S.W.3d ___ (Ky. 2024); *RAZ, Inc. v. Mercer County Fiscal Court*, ___ S.W.3d ___ (Ky. 2024). In *Bluegrass Trust*, rendered contemporaneously with this opinion, a majority of this Court held KRS 100.3471 imposed an unconstitutional burden on the right to appeal. The reasoning of *Bluegrass Trust* applies equally to this matter and interested parties should refer to that opinion. Consequently, the Court of Appeals' determination that it lacked jurisdiction to consider the merits of the appeal was in error.

In the interest of judicial economy, we decline to remand this matter to the Court of Appeals for further consideration, and exercise our supervisory authority under Section 110(2)(a) of the Kentucky Constitution to resolve the underlying merits of this appeal.

## I.     Facts

In 2002, the G.N. Miles Estate in Jessamine County, totaling 208 acres of property, was divided into four separate parcels. In 2004, the owner of Parcel 2 submitted plans for residential development on that parcel, including

---

[1] Kentucky Revised Statutes.

the building of a bridge over a creek located on Parcel 2 and extension of Williams Road up to the property line separating Parcels 2 and 3. This plan was approved by the Nicholasville Planning Commission (NPC). The NPC acknowledged in 2005 that the bridge and road extension had not been built, but nonetheless recorded the final plat for Parcel 2.

At some point afterward, LPW Redevelopment, LLC ("LPW") became the owner of both Parcels 2 and 3. In 2017, LPW sought and received a zone change for Parcels 2 and 3. A Final Development Plan/Preliminary Plat was submitted by LPW, approved by the NPC, and subsequently approved by the Nicholasville City Commission. This Final Development Plan showed a bridge over the creek on Parcel 2 and Williams Road being extended to connect with Parcel 3. A Certificate of Land Use Restriction was recorded for Parcel 3, but the Final Development Plan was not included in that Certificate, merely referenced. No explicit language exists on the Final Development Plan map that indicates the owner of Parcel 3 would be obligated to build the Williams Road extension and bridge which are located almost entirely on Parcel 2.

In 2018, LPW offered to sell Parcel 3 to Boone Development, LLC ("Boone"). The sale was completed that same year. Significant construction activity was conducted on Parcel 3, which had been redesignated Unit 1 and Unit 2 for development purposes. At this point, according to the testimony of James Monroe, owner of Boone, the City of Nicholasville and its representatives informed him that Boone was responsible for building the Williams Road

4

extension and bridge on Parcel 2.  Boone disputed this obligation and the parties engaged in further discussion.

Central to this litigation, the NPC informed Boone it required a letter of credit which included, among numerous other items, coverage for the road extension and bridge.  A letter of credit is required, when deemed necessary, to ensure the developer will be responsible for the construction of improvements, rights-of-way, and any other items the city considers to be required.[2]  Tim Cross, Nicholasville's City Engineer, prepared and sent Boone a spreadsheet setting forth the various improvements to be made on Unit 2 and the letter of credit amounts the NPC required to cover those improvements.  Boone informed Cross the spreadsheet erroneously included improvements which had already been completed and incorrectly set out surety amounts based on figures which were grossly different from those shown on the "as-built" construction plans.  Boone also protested the inclusion of amounts for the road extension and bridge as it continued to insist it was under no obligation to construct either.[3]

When Boone sought to correct the perceived errors in the NPC's letter of credit requirements, especially the inclusion of the road extension and bridge,

---

[2] *See* KRS 100.281(4) which requires "provision of good and sufficient surety to insure proper completion of physical improvements[.]"  A surety is required for the protection of the local government and to "guarantee a developer does not start and stop construction, leaving an unfinished, deteriorating and dangerous site[.]" *Western Surety Company v. City of Nicholasville,* 552 S.W.3d 101, 109 (Ky. App. 2018).

[3] Cross subsequently admitted the spreadsheet contained flaws, but remained steadfast that the road extension and bridge were properly included.

5

Cross told Boone that any letter of credit which did not include those two items simply would not be considered by the NPC. Boone attempted to contact various members or representatives of the NPC regarding the mistakes in the letter of credit requirements but received no response.

Boone filed a declaratory action in Jessamine Circuit Court seeking a declaration of rights that it did not have to build the Williams Road extension and bridge. The NPC argued Boone had failed to exhaust administrative remedies by not appealing its decision to the Board of Adjustment. Boone countered that the NPC had not decided anything, and the subsequent lack of communication necessitated the declaratory action. The trial court agreed with Boone and instructed the NPC to make a decision. In compliance with this order, the NPC issued a Notice of Decision that affirmed its letter of credit requirements. The Board affirmed the NPC and issued a decision setting forth 12 findings of facts.

Boone appealed and the Jessamine Circuit Court affirmed the Board. Applying a standard that required Boone to show the evidence before the Board was so compelling that the Board's decision was clearly unreasonable, the trial court held the Board was exercising its proper legislative powers in hearing the appeal, and there was no denial of due process. The court then found the Board's findings were not clearly unreasonable. As to Finding 6, it held the "stream crossing"—which is a more cumbersome phrase for bridge—was "off-site storm infrastructure," and the easement allowed Boone to enter Parcel 2 to build the bridge. The trial court also concluded that, aside from the road

6

extension and bridge, "Defendants concede that no accurate bond requirements were ever provided." Or in other words, the other items on the letter of credit aside from the road extension and bridge were conceded to be inaccurate. The trial court deemed this to be unimportant because the road extension and bridge were the main divisive issues; Boone insisted that a letter of credit be issued without them, and the NPC refused to consider that potentiality.

Boone appealed to the Court of Appeals which, after concluding KRS 100.3471 was constitutional, dismissed the appeal upon determining it was without jurisdiction to adjudicate the matter as Boone had not posted the required appeal bond in the appropriate time. Boone sought discretionary review, which we granted.

We now address the merits of the appeal and further facts will be developed as necessary.

## II. Standard of Review

"Basically, judicial review of administrative action is concerned with the question of *arbitrariness.*" *American Beauty Homes Corp. v. Louisville & Jefferson Cnty. Planning & Zoning Comm'n,* 379 S.W.2d 450, 456 (Ky. 1964). To determine arbitrariness, a reviewing court looks for "(1) action in excess of granted powers, (2) lack of procedural due process, and (3) lack of substantial evidentiary support[.]" *Id.* "As a general rule the yardstick of fairness is sufficiently broad to measure the validity of administrative action." *Id.* at 457.

7

### III. Analysis

As noted at the outset, this opinion is primarily concerned with resolving the merits of the underlying dispute. Insofar as a dispute is raised as the constitutionality of the appellate bond requirement set forth in KRS 100.3471, we direct the reader to our opinion in *Bluegrass Trust,* holding that the statute impermissibly burdens the constitutional right to an appeal. *Bluegrass Trust,* ___ S.W.3d at ___ ("By applying to good faith assertions of legal rights and failing to preserve the status quo, the bond of KRS 100.3471 admits to being nothing other than a price of admission to the Court of Appeals, and its only effect is to penalize Kentuckians wishing to challenge land-zoning decisions beyond the circuit court by exercising their constitutional right of appeal[]"). We adopt that holding to resolve the constitutional claim here.

The primary point of contention remaining between the parties is whether Boone is responsible for constructing the bridge and Williams Road extension. Because the NPC's determination was not clearly unreasonable, we affirm the decision of the Jessamine Circuit Court.

Our review entails consideration of the Board's decision to uphold the NPC's determination to require a letter of credit to include the cost of the bridge to connect two parts of Williams Road. Boone raises three issues in seeking relief: (1) the Board acted in excess of its legislatively granted powers; (2) Boone was denied procedural due process; and (3) the evidence presented by Boone to the Board was so strong that denial was clearly unreasonable. The first issue

8

is easily resolved:  KRS 100.257 and KRS 100.261 provide a clear grant of power to the Board to hear appeals of the NPC.

As to the second issue, we discern no arbitrariness of the part of the Board.  "Procedural due process is not a static concept, but calls for such procedural protections as the particular situation may demand." *Kentucky Cent. Life Ins. Co. v. Stephens*, 897 S.W.2d 583, 590 (Ky. 1995).  "As a general rule, in an administrative setting, procedural due process merely requires 'a hearing, the taking and weighing of evidence if such is offered, a finding of fact based upon a consideration of the evidence, [and] the making of an order supported by substantial evidence[.]'" *Friends of Louisville Public Art, LLC v. Louisville/Jefferson Cnty. Metro Historic Landmarks & Pres. Dists. Comm'n*, 671 S.W.3d 209, 213 (Ky. 2023) (quoting *Hilltop Basic Res., Inc. v. Cnty. of Boone*, 180 S.W.3d 464, 469 (Ky. 2005)).  Although Boone believes the Board was deficient in the amount explanation it provided, no dispute exists that the Board gave Boone a hearing, took and weighed evidence, made a finding based upon that evidence, and issued an order supported by that evidence.  While we agree with the trial court that the Notice could have included more comprehensive detail, it nevertheless sufficed to make Boone aware of the Board's position relative to the bridge.  The standard for procedural due process was satisfied in this instance.

The final issue is whether Boone presented such strong evidence to the Board that the record compels a conclusion the Board's decision was unreasonable and arbitrary.  Where a party asserts the administrative decision

9

lacked substantial evidentiary support, the burden is upon the moving party to show that the record compels relief in its favor. *See Gentry v. Ressnier*, 437 S.W.2d 756, 758 (Ky. 1969) (explaining issue in circuit court was not whether substantial evidence supported board's decision to deny permit, but whether evidence presented by applicants "was so strong that the denial of the permit was clearly unreasonable[]"); *Bourbon Cnty. Bd. of Adjustment v. Currans*, 873 S.W.2d 836, 838 (Ky. App. 1994) (holding denial of administrative relief to party carrying burden is arbitrary if the record contains compelling evidence mandating a contrary decision, and "[t]he argument should be that the record compels relief[]"); *REO Mech. v. Barnes,* 691 S.W.2d 224, 226 (Ky. App. 1985), overruled on other grounds by *Haddock v. Hopkinsville Coating Corp.*, 62 S.W.3d 387 (Ky. 2001) (from board of adjustment denial of a conditional use permit, "[f]or evidence to compel a different result, the proof in [applicant's] favor must be so overwhelming that no reasonable person could reach the conclusion of the Board[]").[4]

As noted, the Board made 12 findings of fact:

> 1. Various zone changes and a Final Development Plan were recommended and adopted by the [NPC] on October 23, 2017, for the development of the land formerly known as the G.N. Miles Estate Property–Phase 3, now known as Eastgate Subdivision ("Property"). The Final Development Plan ("FDP")

---

[4] This slight variation in the review of an administrative agency's factual findings is no different from our decisions in worker's compensation cases: *See Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986) (if the fact-finder finds in favor of the person having the burden of proof, the burden on appeal is only to show that there was some substantial evidence to support the decision); *cf. Gray v. Trimmaster*, 173 S.W.3d 236, 241 (Ky. 2005) (if the ALJ finds against the party having the burden of proof, the appellant must "show that the ALJ misapplied the law or that the evidence in her favor was so overwhelming that it compelled a favorable finding[]").

controls the development of the Property and includes a stream crossing as part of the design.

2.  Thereafter, the Nicholasville City Commission duly adopted the NPC's zone change recommendation and the FDP for to the Property by city ordinance.

3.  A Certificate of Land Use Restriction, disclosing the zone changes and the existence of the FPD (sic) imposed on the Property, was recorded in the Jessamine County Clerk's office on January 24, 2018.

4.  [Boone] purchased the Property on September 18, 2018. James Monroe, Boone's owner, was advised of the obligation to build a stream crossing before the purchase.

5.  Boone's engineer submitted Construction Plans which were approved by NPC staff on or before February 5, 2019 and which included specifications for the construction of the stream crossing as part of the development of Eastgate that were consistent with and required by the FDP.

6.  The stream crossing to be constructed will permit the extension of Williams Road from its current terminus in Phase 2 of the G.N. Miles Estate Property across Eastgate to its intersection with Sulphur Well Road.  The stream crossing will be located partially on the Property and partially on land not owned by Boone (Phase 2), but within a platted drainage and utility easement on Phase 2.

7.  On September 30, 2019, Boone, through James Monroe, announced its refusal to construct the stream crossing and/or bond a plat of a portion of the Property (Eastgate, Unit 2) which included the stream crossing as part of its development.

8.  Boone was advised at a September 30, 2019 meeting, by Tim Cross and Dean Anness, that refusal to build and/or bond the stream crossing would result in the disapproval of the Eastgate, Unit 2 plat for recording.

9.  Boone's owner, James Monroe, was notified by email on October 10, 2019, of the amount of the bond which had to be posted for the Eastgate, Unit 2 plat to cover the cost of the stream crossing.

10.  The plat for Eastgate, Unit 2, submitted by Monroe on behalf of Boone, to the NPC staff was defective in that the bond amount did not include the cost of the stream crossing and the plat gave no indication of the area on the plat where the stream crossing would be situated.

11.  The decisions, by Cross and Anness, to refuse recommending the recording of the Eastgate, Unit 2 plat and to fix the amount of the bond were later confirmed in writing by Cross's letter to Boone and Via Vitae Development, LLC's owner, James Monroe, dated July 7, 2020.

12.  The decisions, by Cross and Anness, with regard to the Eastgate, Unit 2 plat were dictated by the Final Development Plan.  For Cross and Anness to have approved the Unit 2 plat for recording with an inadequate bond would have been in direct contravention of the NPC's and the NCC's decision to adopt such plan.

The trial court extensively reviewed the Board's factual findings, the most significant of which was that LPW had submitted a Preliminary Subdivision Plat and Final Development Plan for the G.N. Miles Estate Subdivision, Unit 3 (Parcel 3) as part of a zone change request for the property.  The trial court and the Board correctly held that when a final development plan is incorporated as a part of a zone change, "*this development plan shall be followed.*"  KRS 100.203(2) (emphasis added).  Furthermore, the zone change and the final development plan were matters of public record.  As noted by the Board's finding number 3: "A Certificate of Land Use Restriction, disclosing the zone changes and the existence of the FDP imposed on the Property, was recorded in the Jessamine County Clerk's office on January 24, 2018."  The trial court noted Zoning Ordinance for the City of Nicholasville, Kentucky at Article 15, "Amendments," states, consistent with KRS 100.203(2): "[t]he approval of a development plan shall limit and control the issuance of all building and occupancy permits, and restrict the construction location and use of all land and structures to the conditions set forth in the plan."

Based on its analysis, the trial court further aptly concluded:

12

The FDP for Phase 3 of the G.N. Miles Estate Property (referenced herein as "Eastgate Subdivision" or "Eastgate") requires the construction of a stream crossing that permits Williams Road to extend from the Phase 2 portion of the G.N. Miles Estate Property into Eastgate Subdivision, continuing on to an intersection with Sulphur Well Road. The FDP cannot be "followed" unless the stream crossing is built. It thereby controls the construction of this particular part of the infrastructure designed for Eastgate. Despite [Boone's] assertion, no regulation requires the FDP to be signed, and they cite no authority supporting their assertion. A zone change applicant submits the FDP with the zone map amendment application as an "agreed" condition; it is adopted by the NPC with the zone changes; and its existence in the NPC records and as part of the [Nicholasville City Commission]'s ordinance is all that is needed to validate it. If [Boone] had any proof that the FDP on record with the NPC was not what was agreed to by LPW as a condition of the zone change, he should have presented it to the Board at the hearing.

The trial court then noted KRS 100.3681(1) requires public filing—and hence notice—of Certificates of Land Use restrictions, which "shall indicate the type of land use restriction adopted or imposed upon the subject property . . . , including variances, conditional use permits, conditional zoning conditions, unrecorded preliminary subdivision plats, and *development plans*[.]" (Emphasis added). It further observed, based on testimony from Monroe, Boone's principal, and Jerry Woodall, a member of LPW (Boone's immediate predecessor), the Board had found Boone had, in fact, been advised of the need to construct the bridge. Not only did Boone have constructive knowledge of its obligation, it had actual knowledge.

Next, the trial court evaluated the Board's finding number 5, that Banks Engineering, the engineering firm hired by LPW for the property's development, had been continued in that role by Boone. When Banks, on its principal's (Boone's) behalf, submitted construction plans for the project, those plans

13

recognized and provided for the bridge on multiple occasions. Boone admitted seeing the construction plans which included the bridge but did not seek to amend the plans or question their accuracy before they were reviewed and approved by the Planning Commission's staff.

Finally, the fundamental issue concerns Boone's refusal to build infrastructure—the bridge—not wholly contained within its property. The trial court considered the Board's finding number 6, which included, "[t]he stream crossing will be located partially on the Property and partially on land not owned by Boone (Phase 2), but within a platted drainage and utility easement on Phase 2." The foregoing analysis, that the FDP controls and Boone purchased the property subject to its requirements, would seem to conclusively resolve this matter. But, to the point that a portion of the bridge was located on land Boone did not own, the trial court correctly reasoned that the bridge is covered by an easement dedicated to public use, specifically a public roadway, like water lines and sanitary sewer lines.

Requiring construction of public facilities is a reasonable cost of developing land. *See Lampton v. Pinaire*, 610 S.W.2d 915, 919 (Ky. App. 1980) (holding "[p]ublic policy nevertheless requires that the one who develops his land for a profit also may be required to bear the cost of additional public facilities made necessary by the development[]"). The rationale behind this policy is that "[l]ocal governments are not obligated to develop private property, and indeed, developers must construct streets and other public improvements in a proper manner in order to hold the local government's maintenance costs

14

to a minimum once the dedicated property has been accepted for public purposes." *Id.* Furthermore, the required bridge is partially located on Boone's property and property immediately adjacent thereto.[5]

The only question which initially puzzled the trial court was why the NPC did not initially require LPW to post the letter of credit for the bridge as a condition of its initial approval for Parcel 2. The answer, as the trial court observed, was that the NPC agreed to let LPW, as owner of both Parcel 2 and 3, defer that required construction to Parcel 3. Boone, as successor to LPW, explicitly assumed that obligation when it purchased the property.

Because Boone's proof was not "so overwhelming that no reasonable person could reach the same decision as the Board," *REO Mechanical,* 691 S.W.2d at 226, the decision of the Jessamine Circuit Court on the merits of the underlying dispute is affirmed.

On cross-appeal, the Board argues CR[6] 4.04(7), which requires service of process on a public board be accomplished by serving a member of that board, was not satisfied in this matter. It contends Boone's service of process at the Board's listed government address rather than the personal residences of the Board members was not undertaken in good faith as required by CR 3.01,

---

[5] *Lexington-Fayette Urban County Government v. Schneider*, 849 S.W.2d 557 (Ky. App. 1992), does not compel the result argued by Boone. In *Schneider*, the planning commission attempted to require a developer to build a bridge which would benefit other properties. By contrast, in this case, the Williams Road connection and stream crossing were proposed by and agreed to by LPW as a condition of the zone change. As stated by the trial court, "[f]uture owners, including Boone, were put on notice of the Development Plan by way of the Certificate of Land Use Restrictions filed in the county clerk's office . . . and were required to follow it."

[6] Kentucky Rules of Civil Procedure.

thereby depriving this Court of jurisdiction. We discern no merit to this argument because "[t]he civil rules do not apply in this type of litigation until after the appeal has been perfected." *Bd. of Adj. of City of Richmond v. Flood*, 581 S.W.2d 1, 2 (Ky. 1978). Thus, "the issuance of a summons cannot under the statute constitute an essential element in the filing of the appeal. It is a condition subsequent to the filing; it is procedural and not jurisdictional." *Green v. Bourbon Cnty. Joint Planning Comm'n*, 637 S.W.2d 626, 631 (Ky. 1982). Even if we were inclined (and we are not) to rule that service of process on a public board member in his or her official capacity at the publicly listed address of the board did not constitute a good faith attempt at service of process, it would not divest this Court of jurisdiction.

The Board next contends Michael Eakins, the interim Planning Director at the time the action was filed, should have been dismissed as an unnecessary party. The trial court determined Eakins was a necessary party and refused to grant the dismissal. The Board argues Eakins was not a necessary party because he took no part in the underlying events and his participation in the appeal as acting director was superfluous since the Board was a party. CR 21 allows for the dismissal of misjoined parties "on such terms as are just." This rule allows for dismissal of unnecessary parties when appropriate. But such a dismissal is a discretionary decision, distinct from a legal conclusion that there is no claim upon which relief can be granted under CR 12.02. KRS 100.347(1) and (2) do not require individual members, in their official capacities, of boards or commissions be made a party to an appeal; only the board or commission

16

itself is required to be a party.[7]  We agree Eakins is an unnecessary party but perceive no harm in the trial court failing to dismiss him as such.  Thus, the trial court is affirmed.  *See Drinkard v. George*, 237 Ky. 560, 36 S.W.2d 56, 58 (1930) (holding no harm in trial court's failure to hold Next Friend was unnecessary party).

## IV.    Conclusion

For the foregoing reasons, the Court of Appeals is reversed as to the constitutional question.  Although the Court of Appeals did not reach the underlying merits, in the interest of judicial economy, we have chosen to exercise our supervisory authority to do so based on the record and the parties' briefs.  The judgment of the Jessamine Circuit Court is affirmed in all respects as to the merits and the constitutional question.

All sitting.  VanMeter, C.J., concurs in part and dissents in part by separate opinion, in which Bisig and Keller, JJ., join. Conley, J., concurs in part and dissents in part by separate opinion, in which Lambert and Thompson, JJ., concur.

VANMETER, C.J., CONCURRING IN PART AND DISSENTING IN PART: In this matter, I respectfully dissent from so much of the majority opinion as holds KRS 100.3471 unconstitutional, as expressed fully in my dissent in

---

[7] Boone's argument that the trial court erred in dismissing the NPC was not preserved in its motions for discretionary review and, therefore, is not considered. RAP 44(c)(5); *Indiana Ins. Co. v. Demetre*, 527 S.W.3d 12, 41 (Ky. 2017) (citing *Ellison v. R & B Contracting, Inc.,* 32 S.W.3d 66, 71 (Ky. 2000)).  That is of little consequence, however, because we agree with the Board that its presence as a party is sufficient to afford Boone relief in these cases.

17

*Bluegrass Trust for Historic Preservation v. Lexington-Fayette Urban County Government,* ___ S.W.3d ___ (Ky. 2024). Procedurally, my view is that we should remand to the Jessamine Circuit Court for it to set the required appeal bond so that the Court of Appeals could then review the merits of the matter.

That noted, I acknowledge the majority of the Court has determined the constitutional issue otherwise, which leaves us with the decision whether to remand to the Court of Appeals to decide the merits. Since the record before us is sufficiently developed and presented, I agree that, in interests of judicial economy, we appropriately should resolve the merits of this case. I concur in so much of the majority opinion as affirms the decision of the trial court in upholding the Nicholasville Board of Adjustment's decision with respect to the letter of credit requirements.

Bisig and Keller, JJ., join.

CONLEY, J., CONCURRING IN PART AND DISSENTING IN PART: I concur with the Court's reversal of the Court of Appeals on the constitutional issue presented by this case, which is explained in depth in the contemporaneously rendered *Bluegrass Trust for Historic Preservation v. Lexington-Fayette Urban County Government Planning Commission*, ___ S.W.3d ___ (Ky. 2024). I dissent, however, on the underlying question of whether the Nicholasville Planning Commission (NPC) and Board of Adjustment acted arbitrarily.

KRS Chapter 100 is a comprehensive statute regarding the authority of local governments to regulate land within their jurisdiction. Nicholasville

18

exercised its prerogative under this statute to create a comprehensive plan, as well as passing a general zoning ordinance and subdivision zoning regulations. The zoning ordinance, in pertinent part, states, that the contents of a Final Development Plan must be "of an exact nature, rather than approximate or general." Zoning Ordinance for the City of Nicholasville, KY (Adopted June 1980; Amended thru January 2024) Art. XV, § 1540.2(1)). Importantly, however, the ordinance recognizes that "development plans are not subdivision plans[.]" *Id.* at § 1560.1. When a development plan indicates a "need or intent" to subdivide property then "the Subdivision Regulations shall be applied to proposals contained on the development plan." *Id.* It is indisputable that the plans at issue here, though always referred to as a development plan, disclose an intent to subdivide the subject property thus, the subdivision regulations are controlling so long as they do not offend a statute or the constitution. *Murphy v. City of Lake Louisvilla*, 303 S.W.2d 307, 309 (Ky. 1957).

The Subdivision Regulations do allow the Planning Commission to require "additional conditions, such as covenants or specific notes which it feels necessary to assure conformity to and achievement of the proposed subdivision plan." Subdivision Regulations for the City of Nicholasville, KY (Adopted June 1, 1980; Amended thru November 28, 2022) Art. II, § 225. These regulations also include a list of Final Plat Requirements that must be adhered to prior to approval unless waived. *Id.* at Art. III, § 345.1. Among them are two of particular application here: first, "[l]ocation and dimensions of all easements or right-of-way when provided for or owned by public utilities, with the

19

limitations of the easement rights *definitely stated* on the plat." *Id.* at Art. III, § 345.1(G) (emphasis added). Second, "[l]ocation and dimensions of all property which is offered for dedication for public use or reserved by deed restrictions or covenant for the common use of property owners of the subdivision. The intended purpose of such use *shall be stated* on the plat." *Id.* at § 345.1(H) (emphasis added). Moreover, the supplementary section requires additional information to be listed on the plat, including: "[d]eed restrictions and protective covenants shall either be placed on the Final Plat or attached thereto in form for recording. (If recorded separately, reference to the restrictions shall be made on the final plat)." *Id.* at § 345.2(C).

In this case, it is undisputed that no document whatsoever exists plainly stating in writing that Parcel 3 has upon that land a restriction, covenant, or encumbrance—however it is denominated—as a condition precedent to developing that parcel, that the owner must build a road extension and bridge situated almost entirely on Parcel 2. The road extension and bridge are a right-of-way. Their entire purpose is to provide a connection to Sulphur Well Road to allow for public automobile traffic. The sketch of the road and bridge are insufficient because they do not conform to the Subdivision Regulations. The limitation of easement rights are not "definitely stated on the plat[,]" which I interpret to require written English, not just an image of a proposed, hoped-for, or believed-to-exist easement. And, as the Board found a small portion of the road lay directly on Boone's property, the plat needed to include a statement of

20

the intended purpose of the right-of-way. The Board cites no document with the requisite language.

To the extent it might be argued I am applying final plat standards to a preliminary plat approved in 2017, I note that the plat still fails to adhere to preliminary requirements for the same reasons as the final requirements. The preliminary standards require the location and size of existing and proposed easements, *Id.* at § 333.1(K); and statements of deed restrictions and covenants, *Id.* at § 333.2(D). Once again, no such statement is on the document regarding the road and bridge. Moreover, the topographic contours and existing streets within 500 feet of the property boundary have to be included on the preliminary plat, *Id.* at § 333.1(F) and (G); and all proposed streets. *Id.* at (J). Thus, it can hardly be said that the inclusion of the road and bridge on the plat constitutes adequate notice that there is an encumbrance on Parcel 3 to build the road and bridge, because the preliminary plat requirements would have required their inclusion under any set of circumstances.

Next, "[a]n easement confers a right upon the dominant tenement to enjoy a right to enter the servient tenement." *Sawyers v. Beller*, 384 S.W.3d 107, 111 (Ky. 2012). "It is the essence of an appurtenant easement that it exists for the benefit of the dominant estate alone." 25 Am. Jur. 2d Easements and Licenses § 9. "But the dominant is carved out of the servient estate only to the extent of and according to the nature of the use during the prescriptive period." *Lyle v. Holman*, 238 S.W.2d 157, 159 (Ky. 1951). Or, in other words,

21

"an easement holder may not *expand* the use of the easement[.]" *Sawyers*, 384 S.W.3d at 111.

Boone does not possess an easement to enter upon Parcel 2 and build a road and bridge. No party has made that argument and it would be unsuccessful for the simple fact that Boone derives no exclusive benefit over against Parcel 2 from such an easement. Parcel 2 is just as much served by the construction of the road and bridge, and there is some evidence in the record to suggest that Parcel 2 has the greater benefit.[8] Second, the existence of a drainage and utility easement is not relevant or probative evidence of a separate easement for a separate purpose, to the extent the Board can be understood as making such an argument. Finally, the use of the drainage and utility easement is necessarily limited to drainage and utility purposes. "It is ancient law that nothing passes under an easement but what is necessary for its reasonable use and proper enjoyment." *Farmer v. Kentucky Utilities Co.*, 642 S.W.2d 579, 580 (Ky. 1982). "The use of the easement must be as reasonable and as little burdensome to the landowner as the nature and purpose of the easement will permit." *Id.* It is obvious a road extension and new bridge for purposes of facilitating automobile traffic are neither reasonable nor proper to the use of a drainage and utility easement. I fail to see how allowing construction of a road and bridge, by virtue of the acknowledged easement,

---

[8] Boone submitted evidence before the Board, and the Board has not cited any evidence to the contrary, that only 190 lots on Parcel 3 would be served by the road and bridge construction, while 1,443 lots on Parcel 2 would be served.

22

would not be an expansion of that easement and, consequently, an additional unnecessary burden upon the Parcel 2.

Thus, I conclude the NPC's refusal to grant a letter of credit minus the road extension and bridge was arbitrary. The circuit court also noted there were other deficiencies in the letter of credit issued by the NPC regarding the calculation of costs—the court in fact noted those deficiencies were conceded to exist—but refused to address them because it believed the road and bridge were the decisive issue.

It is a "a general rule [that] the yardstick of fairness is sufficiently broad to measure the validity of administrative action." *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission*, 379 S.W.2d 450, 457 (Ky. 1964). It was unfair of the NPC to insist that an encumbrance existed on Parcel 3 when no document in the Final Development Plan clearly stated in English the existence of such an encumbrance in violation of the Subdivision Regulations. And it was unfair to insist that Boone, as a subsequent purchaser, should alone bear the burden and cost of the road extension and bridge, when the right-of-way will be of equal or greater benefit to Parcel 2. Reason and justice clearly point the way to get this road and bridge built that is equitable to Boone, to LPW, and to the residents of Nicholasville. I would reverse the Court of Appeals, and remand with instructions to the Board of Adjustment to order the NPC issue a letter of credit that does not include

23

construction of the road extension and bridge, as well as with other corrections to the concededly erroneous calculation of costs.

Lambert and Thompson, JJ., join.

COUNSEL FOR APPELLANTS,
BOONE DEVELOPMENT, LLC
AND VIA VITAE DEVELOPMENT,
LLC D/B/A JAMES MONROE
HOMES:

Carroll Morris Redford, III
Elizabeth Catesby Woodford
Miller Griffin & Marks PSC


COUNSEL FOR APPELLEES
NICHOLASVILLE BOARD OF
ADJUSTMENT; TANYA BOLTON;
JENNIFER CARPENTER;
PAULA ELDER; WM. WAYNE
HADEN; ALEX LYTTLE; JIM
PARSONS; HAROLD E. SMITH;
THE CITY OF NICHOLASVILLE
PLANNING COMMISSION; AND
JIMMY WELLS:

Bruce Evans Smith
Henry Evans Smith
Bruce E. Smith Law Offices, PLLC

COUNSEL FOR APPELLEES,
TIM CROSS AND MICHAEL EAKINS:

Darren Todd Sammons
City of Nicholasville

COUNSEL FOR APPELLEE,
COMMONWEALTH OF
KENTUCKY, EX REL.
RUSSELL COLEMAN:

Matthew Franklin Kuhn
Elizabeth Themins Hedges
Courtney Elizabeth Hightower
Brett Robert Nolan
Office of the Attorney General

25